561 So.2d 1229 (1990)
RABEN BUILDERS, INC., a Florida Corporation, and Pastal Construction Company, Inc., a Florida Corporation, D/B/a Raben-Pastal, a Joint Venture, Appellants,
v.
FIRST AMERICAN BANK AND TRUST COMPANY, a Florida State Banking Corporation, Peat, Marwick, Mitchell, & Co., a Partnership, Kathryn I. Rockwell and Paul S. Pariser, Appellees.
No. 88-2333.
District Court of Appeal of Florida, Fourth District.
May 9, 1990.
Rehearing and Rehearing Denied July 2, 1990.
Phillip C. Gildan of Nason, Gildan, Yeager & Gerson, P.A., West Palm Beach, for appellants.
Edward A. Marod of Edward A. Marod, P.A., and Gunster, Yoakley, Criser & Stewart, P.A., West Palm Beach, for appellee Peat, Marwick, Mitchell & Co.
Rehearing and Rehearing En Banc Denied July 2, 1990.
*1230 PER CURIAM.
Appellant, Raben-Pastal, timely appeals the trial court's final summary judgment. We affirm.
Raben-Pastal ("Raben") is a real estate developer in south Florida. During the period between November 1981 and October 1982 Raben's bookkeeper forged the signature of Raben's chief executive on 135 checks embezzling $650,000.00. As a result, Raben filed suit against its accountant, Peat Marwick, for accounting malpractice/negligence in failing to safeguard against or discover the embezzlement and against its depository bank, First American Bank & Trust ("First American"), for accepting forged checks drawn on Raben's account (R. 1-18).
Subsequently Raben settled with First American for its liability on the embezzlement, and a number of other dealings between the two parties, for over two million dollars. First American was dismissed from this action by stipulation, based on the settlement. The stipulation dismissed "all of the claims filed in this matter by the Plaintiffs against only the Defendant, First American Bank and Trust with prejudice."
Raben proceeded on its amended complaint against Peat Marwick. Peat Marwick counterclaimed against Raben for accounting services rendered under an agreement entered after discovery of the embezzlement. The trial court granted Peat Marwick's motion for partial summary judgment on grounds that Raben had been fully compensated for its $650,000 loss by way of settlement with First American and therefore Raben could not be compensated again for the same damages flowing from the embezzlement. Subsequently the trial court entered a final summary judgment finding that Raben Builders was not entitled to any recovery from Peat Marwick and awarding Peat Marwick the sum of $20,136.68 on its counterclaim.
Raben raises three issues on appeal two of which we address: (1) the lower court's judgment, finding that, based on Raben's settlement with First American, Raben may not collect damages for the embezzlement from Peat Marwick, which would in effect be a double recovery of $650,000 for the forged checks; (2) the judgment of $20,136.68 entered in favor of Peat Marwick on its counterclaim for accounting services against Raben.
Raben alleges that the case relied on by the court to support its grant of partial summary judgment, Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116 (1934), was inappropriately applied by the trial court; that there is no "subrogee" and therefore the trial court improperly applied the equitable doctrine of subrogation.
In this case the trial court found that First American and Peat Marwick were "consecutive" tortfeasors. The court also made the finding that although one was responsible for banking malpractice and the other for accounting malpractice, the singular loss incurred by Raben was $650,000 for the embezzlement. As the court stated, "even if the number of dollars recoverable by plaintiff from bank and Peat Marwick were not identical, all the damages recoverable by plaintiff from Peat Marwick were also recoverable by plaintiff from bank."
Peat Marwick contends that the trial court's decision is supported by the law of setoff and that section 46.015(2) Fla. Stat. (1987)[1] provides authority for the trial court to set off the settlement paid by First *1231 American. We agree. Raben had a choice of whether to settle with either of the defendants or go to trial against both, but, in either case, its total damages flowing from the embezzlement remained the same. The trial court rightly found that Raben was entitled to but one recovery for $650,000. Raben elected to receive full compensation for its loss from the embezzlement from the settlement with First American. It is not entitled to a double recovery. Kingswarf, Ltd. v. Kranz, 545 So.2d 276 (Fla. 3d DCA 1989); Besett v. Basnett, 437 So.2d 172 (Fla. 2d DCA 1983); Atlantic Coastline R.R. v. Saffold, 130 Fla. 598, 178 So. 288 (Fla. 1938).
As for whether Raben realized additional and distinct damages from Peat Marwick's alleged negligence, the trial court provided Raben with an opportunity to establish that it was entitled to pursue Peat Marwick for damages which were separate, distinct, and in excess of $650,000, Raben failed to demonstrate that there was any genuine issue remaining on this point and therefore summary judgment was proper.
Raben contends that Peat Marwick has been unjustly enriched by this because it will not have to pay for the alleged wrongful failure to detect the embezzlement. Here, again, it appears that Raben elected the extent of recovery it would require from each of the defendants at the time it settled with First American. Raben effectively released Peat Marwick from liability by settling for the full amount of the embezzlement and then failing to establish, in the trial court, that Peat Marwick was responsible for separate or additional damages above $650,000.
We find no error in the equitable remedy fashioned by the trial court which effectively set off the proceeds from the Raben-First American settlement against the total compensation Raben would potentially receive in an action against Peat Marwick for the embezzlement. See 80 C.J.S. Set-Off and Counterclaim § 5  Equitable Set-Off, (1953).
With regard to the counterclaim, Peat Marwick alleged Raben engaged Peat Marwick to perform special accounting services in connection with the embezzlement in the fall of 1982; that Peat Marwick fully performed the services and therefore Raben became obligated to pay Peat Marwick for the services. Raben asserted three defenses to the counterclaim, in particular, that the special audit was necessitated by the malpractice, breach of contract and/or negligence of Peat Marwick in performing the regular audit and review of Raben's books, and Peat Marwick was therefore not entitled to payment.
The evidence produced by Peat Marwick to substantiate that there was an agreement between the parties is a letter dated November 8, 1982 in which Peat Marwick outlined the special procedures it would perform in evaluating the Raben account in connection with the alleged embezzlement. There is no dispute that Raben accepted the services.
Raben's only contention is that its affirmative defense, i.e., that the services were necessitated by Peat Marwick's own negligence in failing to uncover the embezzlement, was left unrebutted by Peat Marwick, unresolved by the court and thereby precluded the entry of summary judgment, citing, Johnson & Kirby Inc. v. Citizens National Bank of Fort Lauderdale, 338 So.2d 905 (Fla. 3d DCA 1976). In Johnson the court found that the appellant's affirmative defense raised a genuine issue of material fact, and on finding no contravention of the affirmative defense in the record, the court held that summary judgment was improper where the defense was left unresolved. There was no question in Johnson over the merit of the affirmative defense. In the present case, the affirmative defense, i.e., that Peat Marwick was negligent, was resolved by the court's entry of summary judgment against Raben with regard to its right to collect from Peat Marwick for the embezzlement damages. Raben's defense to the account stated does not allege fraud, duress, mistake or "other grounds cognizable in equity" and does not challenge the propriety of the account, itself. *1232 See Merrill-Stevens Dry Dock Company v. "Corniche Express," 400 So.2d 1286 (Fla. 3d DCA 1981) where the court sets out the elements of a claim based on account stated, in pertinent part, i.e., that for an account stated to exist there must be an agreement between the parties that a certain balance is correct and due, and an express or implied promise to pay this balance, and, where there is no such agreement between the parties, there can be no recovery on this theory. The action is premised on a sum certain and after it is proven, the account stated may be attacked only by proof of fraud, duress, mistake or other grounds cognizable in equity for the avoidance of an instrument. Id. 1286-87. Here the account stated arose from the parties' agreement made after the embezzlement. Peat Marwick set forth an unrebutted claim to an account stated, i.e., that the parties had an agreement, that Raben accepted the services provided by Peat Marwick and thereafter failed to object to the invoiced amount. The record evidences an unrebutted claim for an account stated and we affirm the judgment entered thereon. See Basic Food Industries, Inc. v. Wackenhut Corporation, 323 So.2d 1 (Fla. 3d DCA 1975). Dutch Inns of America, Inc. v. Jenkins, 301 So.2d 119 (Fla. 3d DCA 1974).
AFFIRMED.
WALDEN and POLEN, JJ., concur.
ANSTEAD, J., dissents with opinion.
ANSTEAD, Judge, dissenting.
Although the result after a trial on the merits may end up being the same, I do not believe the facts are sufficiently undisputed to permit the resolution of this case by summary judgment as to either the main claim or the counterclaim.
It appears that we have three (3) potential wrongdoers here that may be liable to the appellants for their loss. Initially, we have an employee who embezzled $650,000.00 from appellants by forging checks. Apparently, no recovery has been made against the employee. However, in an extensive settlement of various accounts with their bank, the appellants received some compensation for the bank's wrongful payment of the $650,000.00 out of appellants' account on the forged checks. So, the bank, as one of three (3) possible wrongdoers involved in the appellants' loss has paid for its part in the loss.
The third potential wrongdoer is the appellee, appellants' accountant, who is alleged to have been negligent in its duties to monitor the activities of the employee who wrote the forged checks. The trial court has concluded that since all the appellants' damages have been paid by the bank, then the appellants cannot recover from their accountant, the appellee. In my view, this decision is premature since the record is not clear as to how much the appellants received for their claim against the bank for the forged checks. The settlement with the bank was complex and involved other claims between the parties. I cannot say that it is undisputed on this record that the appellants received at least the full amount of the claim for the embezzlement.
I would agree, however, that the amount received from the bank should be allowed as a set-off against any amount eventually recovered for the embezzlement loss, against the appellee. See § 46.015, Fla. Stat. (1987). Presumably, had either the accountant or the bank acted properly in this matter, the attempt to steal by the employee would not have been successful, and the appellants would have suffered no loss. The loss was suffered only by the negligent acts of the bank and accountant combining with the intentional act of the employee to deprive the appellants of their money. All three, in my view, are responsible for the loss. However, with a possible exception as to the employee, any payment made by one should be set off against any recovery against the other. Of course, it may be that the accountant and the bank would also have an equitable subrogation claim against the employee, since they are *1233 paying for a loss primarily and intentionally caused by the employee.
On the counterclaim, I believe a factual issue still exists as to whether the services sued for were made necessary by the accountant's own negligence and whether the appellants may have waived their right to refuse payment of the claim for that reason.
NOTES
[1] Section 46.015 Fla. Stat. (1987) provides:

(1) A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim.
(2) At trial, if any person shows the court that the plaintiff, or his legal representative has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.