[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 01, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-14975

_____

D.C. Docket No. 97-01484 CV-DTKH

BLASLAND, BOUCK & LEE, INC.,
a New York Corporation,

Plaintiff-Counter
Defendant-Appellee-
Cross-Appellant,

versus

CITY OF NORTH MIAMI, a
municipal corporation of the State
of Florida,

Defendant-Counter-
Claimant-Appellant-
Cross-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(March 1, 2002)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

CARNES, Circuit Judge:

The City of North Miami hired Blasland, Bouck and Lee (Blasland), an environmental engineering firm, to clean up a polluted parcel of land owned by the City. The City was required to clean up the land by a consent decree it had entered into with the United States Environmental Protection Agency in settlement of a lawsuit the EPA had brought against the City under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq. Midway through the cleanup job, the City terminated Blasland's contract. Blasland believed that the City had terminated the contract without cause and had failed to pay all the money owed under the contract; the City believed that Blasland was not entitled to payment because it had been negligent in doing the work. This litigation is the fruit of their disagreement.

Blasland sued the City to recover the money owed under their contract, asserting theories of recovery that included breach of contract and CERCLA cost recovery. The City counterclaimed for professional negligence, breach of contract, and CERCLA contribution. All of the claims but the CERCLA claims were tried to a jury, which found in favor of Blasland on its breach of contract claim and in favor of the City on its professional negligence (malpractice) and breach of contract counterclaims. The CERCLA claims were then tried to the court, which

ruled in favor of Blasland and against the City. That ruling provided an alternate ground of support for the damage award the jury had returned for Blasland, but it did not add to the total award. After the verdicts, the court also ordered that the City's counterclaim award be set off by amounts the City had recovered in a previous CERCLA contribution suit against the companies that had shipped the waste to the landfill. That setoff reduced the City's counterclaim award to zero, and the court entered judgment for Blasland in the full amount awarded it by the jury, plus prejudgment interest on that amount.

The City appeals, raising three points of error. Blasland cross-appeals, raising its own four points of error, including one point that requires us to confront an issue of first impression in this circuit about the availability of defenses to a CERCLA suit. For the reasons discussed below, we affirm in part, reverse in part, and remand.

## I.  BACKGROUND

### A.  FACTS

In 1970 the City acquired a tract of land along Biscayne Bay. In 1972 it leased the land to a private company, Munisport Incorporated, for development as a golf complex, and then in 1974 it amended the lease to allow the site to be used

as a landfill.  Solid waste was dumped at the Munisport site from 1974 to 1980.  In 1983 EPA put the site on its National Priorities List[1] of hazardous release sites and conducted a series of studies that revealed that the buried waste was decomposing and causing ammonia to leach into the underlying groundwater.  That contaminated groundwater was, in turn, polluting an adjacent mangrove preserve in Biscayne Bay.

In 1990 the EPA compiled the results of its studies in a Record of Decision document, developed a cleanup plan for the site, and filed a CERCLA complaint against the City to force it to clean up the Munisport site.  The EPA and the City settled that suit by a consent decree, under which the City agreed to clean up the Munisport site according to the EPA plan in return for the EPA's covenant not to sue.  Attached to the consent decree was a document, called a Scope of Work, that outlined the EPA's vision of how the City should study the pollution problem, design a more detailed cleanup plan, and put that plan into effect.  The EPA plan required the City to: 1) breach a causeway between the adjacent mangrove preserve and Biscayne Bay, allowing more tidal circulation into the preserve; 2) construct

---

[1]The National Priorities List is a list of polluted sites compiled by the EPA.  CERCLA requires the EPA to compile the list.  Placement of a site on the list makes the site eligible to be cleaned up through the expenditure of money from the Superfund, a fund financed through a combination of appropriations, EPA fees, and industry taxes,  which was also established by CERCLA.   42 U.S.C. § 9605; see also United States v. Hercules, Inc., 247 F.3d 706, 715 (8th Cir.), cert. denied, 122 S.Ct. 665 (2001).

groundwater-pumping wells at the borders of the landfill to intercept contaminated water before it entered the preserve, thereby forming a "hydraulic barrier" between the site and the preserve; 3) construct a treatment system for the intercepted groundwater; and 4) perform the hydrogeological studies necessary to design the hydraulic barrier and treatment system.

At roughly the same time as it settled the EPA suit, the City entered into an agreement with the Florida Department of Environmental Regulation (DER), under which the Department agreed to reimburse the City for the study and cleanup of the pollution at the Munisport site, and the City agreed to cleanup the landfill and then close it. DER's payment was conditioned on its approving the cleanup work, and its approval was neither conditioned on nor triggered by EPA approval.

In July 1992 the City hired Blasland, an engineering firm, to do the studies and coordinate the cleanup work at the site.[2] The City-Blasland contract provided that Blasland's work must be done to the satisfaction of both EPA and DER, and it specifically referenced the terms of both the consent decree and the agreement between the City and DER. By referencing the consent decree, the contract incorporated the terms of the attached Scope of Work. The Scope of Work laid

---

[2]Blasland had already been working at the site at the time it was hired to coordinate the cleanup job. When the City released its erstwhile prime contractor from the job, the City moved Blasland up from sub to prime contractor, or, in CERCLA terminology, the "Response Action Coordinator."

out a multi-step process for studying the contamination problem and then designing and implementing a solution. EPA approval was necessary at each step. The City was required to cure any deficiencies identified by the EPA, which had authority to order the City to redo any study or test that the EPA judged had not been properly performed.

The contract between Blasland and the City contained a "pay-when-paid" clause in recognition of the fact that the City was depending on reimbursement from DER to pay Blasland for the cleanup work. Under the pay-when-paid clause, the City only became obligated to pay Blasland on a given invoice after DER had cleared that invoice and reimbursed the City for it.

Payment for the main cleanup job was to be a fixed price of $1.4 million. In addition, the contract included an extra-work clause, under which the City could have Blasland perform additional "out of scope" tasks at the site that were not part of the EPA cleanup. Payment for those tasks was to be based on Blasland's normal hourly rate.

While Blasland was coordinating the CERCLA-cleanup work, it was also doing other work at the site under the contract's extra-work clause. In particular, one extra task Blasland performed was supervising another contractor's placement of fill dirt at the site. Unfortunately, that contractor illegally dumped fill into

6

wetlands, causing additional cleanup costs and prompting notices of violation from federal and state agencies.

The primary work under the contract, however, was the "in scope work" of cleaning up the Munisport landfill according to the EPA plan. Once the City and Blasland signed the contract, Blasland began work on that job, with the EPA providing oversight to assess compliance with the consent decree and its Scope of Work. The first few phases of the plan went through without a hitch, as Blasland devised a plan to study the pollution, conducted studies, and began using the studies to develop a plan for the actual cleanup work. Problems arose, however, in the design of the planned hydraulic barrier. To build that barrier, Blasland first had to conduct a "pump test" to determine how many pumps it would need to effectively prevent water from seeping into the mangrove preserve. Blasland deficiently performed one of the pump tests,[3] and then it used the results of that test to design of the barrier. The EPA deemed that design unacceptable, and it sent Blasland and the City a letter identifying deficiencies in the design and instructing the City to revise its cleanup plan.

---

[3]The district court found as a fact that Blasland's performance of that test was deficient, and Blasland has not challenged that factual finding in this appeal.

7

In June 1995, approximately one month after the EPA instructed the City to revise the plan, the City terminated Blasland's contract. The City refused to pay Blasland for some of its work, which the City claimed had been improperly invoiced. About three-quarters of the work for which the City refused to pay was out-of-scope work.

The City then replaced Blasland with another firm, Secor International, which prepared and implemented its own cleanup plan for the site. In September 1997, the EPA amended its Record of Decision document to one of "No Further Action," meaning that no further cleanup work at the site was required of the City, and in 1999 the site was removed from the National Priorities List.

While it was having the site cleaned up by Blasland, and then by Secor, the City also sought to recover the costs of that cleanup from those who had caused the pollution in the first place. In 1992, soon after signing the consent decree with the EPA, the City brought a CERCLA contribution lawsuit against the former operators of the landfill, seeking to recover "the past and future costs associated with the cleanup and remediation" of the site. City of North Miami v. Berger, 828 F. Supp. 401, 403 (E.D. Va. 1993). The City settled that case, receiving from the defendants $900,000 and title to a tract of land.

Later, in 1995, the City brought a second CERCLA contribution lawsuit, this time against the towns and companies that had sent their garbage to the landfill. See City of North Miami v. A&E Constr., Inc., No. 95-0545-CIV-MARCUS (S.D. Fla.). In that second lawsuit ("the A&E lawsuit"), the City, according to deposition testimony its manager gave in the present case, sought to recover "as much money on the cost of the closure and Superfund remediation at the site as we were legally entitled to under CERCLA . . . and all these other acronyms that are out there. . . ." The City settled the A&E lawsuit in June 1997 and received just over one million dollars.

## B. PROCEDURAL HISTORY

In May 1997, Blasland sued the City for failure to pay for some of the work Blasland had performed under the contract. Blasland's theories of recovery included breach of contract, account stated, quantum meruit, CERCLA, and Florida Statutes § 376.313 (a state cleanup-cost-recovery statute). The City brought counterclaims for professional malpractice, breach of contract, and CERCLA contribution.

Blasland's state statutory and contract claims, as well as the City's contract and professional malpractice counterclaims, were tried to a jury. The jury found for Blasland on its contract claim, awarding it roughly $380,000. The jury found for the City on Blasland's state statutory claim, and for the City on its counterclaim that Blasland had breached the contract by committing professional malpractice, awarding the City $114,000. Of that $114,000 award, $50,000 was for Blasland's malpractice in performing its in-scope work, and $64,000 was for Blasland's negligence in performing the out-of-scope work of supervising the contractor who had illegally placed fill in wetlands areas.

The CERCLA claims were then tried separately to the court. The court ruled in favor of Blasland, finding that it should recover roughly $375,000, but that amount was included in, instead of being in addition to, the $380,000 awarded to Blasland by the jury on the contract claim. That $375,000 figure did not include approximately $110,000 the City had failed to pay Blasland, because the City had not been reimbursed for that amount by DER. The district court concluded that the pay-when-paid clause in the contract prevented Blasland from recovering that $110,000, even under CERCLA.

After the jury and bench trials, Blasland filed a motion to set off against the City's counterclaim award the amounts the City had previously received in the

Berger and A&E settlements. The district court granted the motion as to the A&E settlement, and because the amount of the A&E settlement was well in excess of the City's counterclaim award, that award was zeroed out. The district court also granted Blasland's motion to tax prejudgment interest on the total amount it was awarded on its claims against the City. Interest came to roughly $176,000, bringing the total judgment for Blasland to approximately $556,000. After final judgment was entered, Blasland filed four motions for judgment as a matter of law, including one raising a statute of limitations argument against the City's malpractice counterclaim. The court denied all four motions, denying the statute of limitations motion on the ground that Blasland had waived it by not raising it at trial.

The City has appealed both the setoff that eliminated its counterclaim award and the award of prejudgment interest. Blasland has cross-appealed both the district court's failure to grant it a judgment as a matter of law on its statute of limitations defense to the City's malpractice counterclaim, and the court's refusal to include in Blasland's CERCLA claim award the $110,000 covered by the contract's pay-when-paid clause.[4]

[4]Both the City and Blasland press other issues in this appeal. The City contests an evidentiary ruling, while Blasland complains about parts of the jury instructions. Blasland also contends that the district court erred in failing to grant it judgment as a matter of law on the wetlands-dumping portion of the City's counterclaim. As to all of these issues, after careful consideration of the parties' briefs, their oral arguments, and the record, we affirm the district

11

## II.  THE CITY'S APPEAL ISSUES

### A.  SETOFF

After the conclusion of the trials, Blasland moved to set off against the City's counterclaim award the sum the City had recovered when it settled its previous CERCLA lawsuit against the A&E defendants, who had shipped waste to the Munisport site while it was being used as a landfill.  Specifically, Blasland sought the setoff under Florida Statutes § 46.015(2), which allows for setoff in non-tort cases.  (The parties agree that Florida law controls the setoff issue.)  The City opposed Blasland's setoff  motion on the ground that the prior settlement represented a separate recovery for a different injury than the injury the City suffered as a result of Blasland's professional negligence.  As a separate recovery for a separate injury, the City argued, it's a&E settlement proceeds should not be set off against its counterclaim award.  The district court held a hearing and heard argument on the setoff question before issuing its order.

The A&E record showed that, in response to an interrogatory in that litigation, the City had included in a list of the damages it sought in that lawsuit all sums the City had paid to Blasland to implement the EPA cleanup plan, as well as

---

court without further discussion.  See 11th Cir. R. 36-1.

12

the money to be paid to Secor in the future to finish the job.[5]  Further, during a

deposition in the present case, the City Manager explained that, in the A&E

litigation, the City had sought to recover "as much money on the cost of the closure

and Superfund remediation at the site as we were legally entitled to under

CERCLA . . . and all these other acronyms that are out there. . . ."  Finally, at oral

argument on the setoff motion, the City's lawyer conceded that, in the A&E suit,

the City "was seeking as much money as it could get from any source for all the

money it was obligated to pay out. It was seeking as much as it could possibly get."

In ruling on the setoff motion, the district court first noted that "there is no

precise way for the court to determine what amount, if any, the City recovered [in

prior litigation] from others for damages attributed by the jury in this case to

[Blasland]."  Nonetheless, the district court granted the setoff motion, concluding

that the sums sought by the city in the A&E suit "logically included money paid to

[Blasland]."  The setoff wiped out the City's entire counterclaim award, which

included both the $50,000 jury award on the City's professional malpractice

counterclaim, and the $64,000 jury award on its separate counterclaim that

---

[5] The City argues at length that the list of costs produced in response to the interrogatory was merely a compilation of expenditures, not a list of its damages.  However, as Blasland points out, the document was submitted by the City as part of its sworn answers to interrogatories inquiring about damages.  Therefore the district court was justified in treating the list as evidence of the damages sought by the City in the A&E litigation. At the least, the district court's finding in that respect was not clearly erroneous.

13

Blasland's negligent supervision had led to the contractor's illegally dumping fill in protected wetlands.[6]

The City advances two principal arguments that the district court erred in granting Blasland's motion for setoff. In considering those arguments, we review the district court's interpretation of the state statute de novo, see Salve Regina Coll. v. Russell, 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991), and its factual determinations for clear error, see Fed. R. Civ. P. 52(a). The City's first argument against the setoff is that Blasland failed to comply with the plain language of the Florida setoff statute. The statute provides that:

> At trial, if any person shows the court that the plaintiff . . . has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.

Fla. Stat.§ 46.015(2).

The City's position is that the statute's plain language requires the party seeking a setoff to introduce a copy of the release from the prior litigation. It bases this position on the statutory limitation that a setoff is available only "if any person shows the court that the plaintiff . . . has delivered a written release or covenant not

---

[6]Blasland in its motion had also sought a setoff of the settlement from the prior Berger litigation, which was filed in 1992 and settled in 1993. The district court, however, set off only the A&E settlement amount, and Blasland does not complain about the court's decision not to set off the Berger settlement amount.

to sue to any person in partial satisfaction of the damages sued for. . . ." Fla. Stat. § 46.015(2). Blasland did not introduce the settlement document from the prior litigation as evidence to support its motion for setoff.[7] According to the City, Blasland's failure to introduce the settlement documents from the A&E case violated the technical requirements of the statute, meaning that the district court's decision to grant the setoff was error.

However, the plain language of the statute does not contain any requirement that the party seeking a setoff introduce the written settlement into evidence. The statute merely says that a setoff is required "if any person shows the court. . ." that there was a release delivered in a prior lawsuit. Fla Stat. § 46.015(2) (emphasis added). Introducing the release itself is one way of showing the court it exists, but not the only way; neither the statute nor Florida case law requires the introduction of the release itself. In this case, both the fact and amount of the A&E settlement were before the district court and were undisputed by the parties. This was enough to satisfy the statute's "show the court" requirement.

The City's second argument that the setoff was error is somewhat more persuasive, but not enough so. The argument is that under Florida law Blasland was not entitled to a setoff because the City's recovery against Blasland did not

---

[7]The parties disagree as to whether Blasland was ever given a copy of the settlement agreement by the City. It does not matter, because, as we explain, Blasland was not required to introduce the document in order to qualify for a setoff under the Florida statute.

15

duplicate the City's recovery in the <u>A&E</u> litigation. Because the City's argument depends on the interaction of Florida setoff law and CERCLA liability law, before proceeding with our analysis we first provide some background.

We begin with Florida law. Under it, the purpose of a setoff is to prevent a party from recovering twice for the same damages. <u>See, e.g.</u>, <u>Kingswharf, Ltd. v. Kranz</u>, 545 So. 2d 276, 278 (Fla. 3d DCA 1989). Therefore, when a party seeks recovery for the same injury in two separate lawsuits, a defendant in the second lawsuit is "entitled to a credit for any amount paid to the claimant in settlement for the injury." <u>Baudo v. Bon Secours Hosp./ Villa Maria Nursing Ctr.</u>, 684 So. 2d 211, 214 (Fla.3d DCA 1996) (quotation and citation omitted). This is true even when co-defendants are held liable for the same injury under different theories of liability. <u>See</u> <u>Raben Builders, Inc. v. First Am. Bank & Trust Co.</u>, 561 So. 2d 1229, 1230-31 (Fla. 4th DCA 1990). It is not true, however, when the first and second lawsuits seek recovery for different injuries altogether. <u>See</u> <u>Fla. Corvette Calipers, Inc. v. Cincinnati Milacron Mktg. Co.</u>, 670 So. 2d 1203, 1203 (Fla. 4th DCA 1996); <u>Gordon v. Rosenberg</u>, 654 So. 2d 643, 645 (Fla. 4th DCA 1995). Finally, in cases in which a set off of the recovery in prior litigation is in order, the entire amount of the prior recovery must be setoff against the current award, unless the release from the prior litigation specifically allocates sums among the various

16

claims being settled.  See Dionese v. City of West Palm Beach, 500 So. 2d 1347, 1351 (Fla. 1987) ("The only proper method of ensuring against duplicate recoveries in an undifferentiated lump sum settlement situation is to set-off the total settlement funds [from the first case] against the total jury award [in the second case].").

Now, some background about CERCLA liability.  The City's prior lawsuit—the A&E suit—alleged a CERCLA contribution claim.  CERCLA's cost recovery provisions allow a plaintiff in a contribution lawsuit to recover only costs of work that is "consistent with the national contingency plan."  42 U.S.C. § 9607(a)(B); see also Redwing Carriers, Inc. v. Saraland Apts., 94 F.3d 1480, 1496 (11th Cir. 1996).  The national contingency plan "is a series of regulations, promulgated by the [EPA], that establish the procedures and standards for government and voluntary response actions to hazardous substances . . . ." Marriott Corp. v. Simkins Indus., 929 F. Supp 396, 403 (S.D. Fla. 1996).  Those regulations provide that a remedial action is consistent with the national contingency plan if it results in a "CERCLA quality cleanup." 40 C.F.R. § 300.700(c)(3)(ii).  A "CERCLA-quality cleanup," in turn, is defined as a cleanup that is "protective of human health and the environment . . . and . . . cost effective." 55 Fed. Reg. 8666, 8793 (1990).  Remedial actions that are "carried out in

compliance with the terms of . . . a consent decree entered into pursuant to . . . CERCLA" are presumed to be "consistent with the" national contingency plan. 40 C.F.R. § 300.700(c)(3)(i).

It is against this backdrop of Florida law and CERCLA that the City's anti-setoff argument plays out. The argument begins with the premise that, under Florida setoff law, duplication between awards exists only if what has been awarded in the present case rightfully could have been recovered in the prior litigation. Because the City's claim against the A&E defendants was a CERCLA cost-recovery claim, in that lawsuit the City was entitled to recover only the costs of work that was of "CERCLA quality," which includes the requirement that the work have been cost effective. But, says the City, Blasland's work was negligently performed (the jury determined that at least some of it was), meaning that it could not have been "cost effective" and therefore was not "CERCLA-quality." Accordingly, the City argues, it was not entitled to recover in the A&E lawsuit the monies it had paid to Blasland. This means, in turn, that the City's counterclaim award against Blasland for its non-"cost effective" work was necessarily an award for a different injury than the one for which the City received it's a&E settlement. In the first lawsuit, against the A&E defendants, the City's injury for which the City was seeking compensation was paying for a "CERCLA-quality" clean up of

18

the Munisport site.[8]  In the second lawsuit, this one involving Blasland, the City's injury was the money it lost because of Blasland's breach of its contractual promise to do a "CERCLA-quality" cleanup job.  Thus, concludes the City, because its counterclaim award against Blasland was an award for a different injury than the one for which it was compensated in the A&E suit, there was no duplication of awards and should have been no setoff.

The City's argument is a fine polysyllogism, with flawlessly connected episyllogisms, but its initial premise is flawed.  The flawed premise is that, under Florida setoff law, duplication of awards only exists if what has been awarded in the present case rightfully could have been recovered in the prior litigation.  That is not Florida law. In deciding whether what the City obtained in the A&E lawsuit duplicated its counterclaim award against Blasland in this case, it does not matter whether in the A&E lawsuit the City was entitled to recover under CERCLA the sums it had paid to Blasland.  Instead, what matters is that the City sued for those sums in the A&E lawsuit, and the defendants in that lawsuit paid the City to settle it.  The Florida setoff statute allows an award to be reduced by a setoff of compensation  "of the damages sued for," Fla. Stat. § 46.015(2),  not just for damages a party was entitled to recover.  Florida law does not limit the availability

---

[8]To be picky about it, the injury for which the City sought compensation was that portion of the cleanup cost that exceeded the City's equitable share of the expenses.

of a setoff to situations in which the injury compensated in the second lawsuit duplicates the injury for which the party would have been entitled to compensation in the first lawsuit had it gone to trial. In a similar vein, the Restatement (Second) of Torts provides that a prior settlement should be setoff against a second judgment for the same injury "whether or not the person making the payment [in the prior suit] is [actually] liable to the injured person." Restatement (Second) of Torts § 885(3) (1977).

If a plaintiff seeks damages for an injury in a lawsuit, settles that suit, and then attempts to recover for the same injury in a second lawsuit, under Florida law the settlement amount from the first lawsuit should be set off against any award in the second one regardless of what the result in the first lawsuit would have been if it had been litigated to conclusion on the merits. A contrary rule requiring the second court to decide whether the party who recovered the money in the first lawsuit was entitled to it, would undermine some of the advantages of the settlement. It would force the second court to decide the very issues the parties in the first case chose to settle rather than litigate to conclusion. The correct approach under Florida law, in deciding whether awards are duplicative and therefore subject to setoff, is to determine whether any injury alleged in the first lawsuit is duplicated by the injury for which an award has been won in the second lawsuit.

20

Employing this approach, the district court found that the damages the City had sought in the A&E suit did overlap with its counterclaim award in this lawsuit. We agree. In the A&E lawsuit, the City included in its list of the damages it was seeking both the sums it had paid to Blasland and the sums it would have to pay Secor to fix Blasland's errors and finish the job. By the time the City compiled that list of damages, it knew of the deficiencies in Blasland's work, which is why it had fired Blasland and hired Secor, and it still included in its CERCLA claim against the A&E defendants the sums it had paid to Blasland. The City therefore was alleging in the A&E lawsuit that it could recover under CERCLA the money it had paid Blasland, and the statements of the City's representatives in both the A&E lawsuit and this one confirm that was the City's position. When, in this lawsuit, the City was awarded on its counterclaim sums it had paid to Blasland, that award covered some of the same loss for which it had sought recovery in the first lawsuit. Blasland therefore was entitled to a setoff of the settlement the City had recovered in the A&E lawsuit.[9]

## B. PREJUDGMENT INTEREST

---

[9]There is a somewhat different way of looking at this issue, which leads to the same conclusion. Under Dionese, because the A&E settlement did not allocate sums between the City's payments to Blasland and its payments to Secor, the entire A&E settlement amount had to be setoff against the City's counterclaim award against Blasland. Dionese, 500 So. 2d at 1351. This is what the district court did.

21

After the verdicts, Blasland filed a motion to tax prejudgment interest, which the court granted over the City's opposition. The City contends that the district court should not have awarded any prejudgment interest to Blasland, or in the alternative, that it awarded too much.

Under Florida law, which the parties agree applies, the general rule in contract cases is that the prevailing party receives prejudgment interest on its award, and that is so even if the losing party is the State or one of its subdivisions. See Broward County v. Finlayson, 555 So. 2d 1211, 1213. (Fla. 1990); see also Public Health Trust of Dade County v. State, 629 So. 2d 189, 190 (Fla. 3d DCA 1993); City of Cooper City v. PCH Corp., 496 So. 2d 843, 847 (Fla. 4th DCA 1986); Broward County v. Sattler, 400 So. 2d 1031, 1032-33 (Fla. 4th DCA 1981).

When a court is deciding whether to award prejudgment interest, however, "the law is not absolute and may depend on equitable considerations." Finlayson, 555 So. 2d at 1213; see also State v. Family Bank of Hallandale, 623 So. 2d 474, 479 (Fla. 1993). One such consideration is that "'[i]n choosing between innocent victims . . . it would not be equitable to put the burden of paying interest on the public.'" Hallandale, 623 So.2d at 479 (quoting Flack v. Graham, 461 So. 2d 82, 84 (Fla. 1984)). Another consideration is that it is inequitable to allow an award of prejudgment interest when the delay between injury and judgment is the fault of

22

the prevailing party.  Id. at 480.  An additional one is that it is inequitable to award prejudgment interest to a party who could have, but failed to, mitigate its damages.  Id.  The weight of equitable considerations may foreclose any award of prejudgment interest at all, see id. at 480; Flack, 461 So. 2d at 84, or may simply warrant a reduction in the amount to be awarded, see Finlayson, 555 So. 2d at 1213-14 (restricting the time for computing prejudgment interest to the time since demand for payment was first made, and citing other cases that had done the same).

The decision whether to refuse or reduce prejudgment interest, that is, how to balance the equities, is within the trial court's sound discretion. Accordingly, we review the decision to grant prejudgment interest only for an abuse of that discretion.  Cf. Parker Towing Co. v. Yazoo River Towing, Inc., 794 F.2d 591, 594 (11th Cir. 1986) (stating, in an admiralty case, that the district court's decision whether equitable factors warrant not awarding prejudgment interest is reviewed by this court for abuse of discretion).   When a district court has discretion, there are usually a range of choices it may make and still be affirmed; there is not only one right choice for the court to make.  See In re Rasbury, 24 F.3d 159, 168  (11th Cir. 1994).  Accordingly, in determining whether a district court has abused its discretion, we sometimes will affirm even though, had the case been ours to decide

23

in the first instance, we would have reached a different result than the district court. Id. (pointing out "[t]hat is how an abuse of discretion standard differs from a de novo standard of review.").

The City argues that, in deciding to award prejudgment interest to Blasland, the district court erroneously ignored, or failed to properly weigh, four equitable factors that point in the City's favor. The City says those four factors are that: 1) the City paid substantial sums to Blasland under the contract and only withheld final payment due to inadequate invoicing by Blasland; 2) the City promptly paid the jury award after the district court ruled on the CERCLA claims; 3) Florida law disfavors placing the burden of paying interest on taxpayers; and 4) the City had a well-founded claim that Blasland had committed malpractice.

As to the four equitable factors the City invokes, the first and second are makeweights. It does not matter that the City paid Blasland a lot of money if it paid less than it owed.[10] And the City should not get bonus points for promptly paying the judgment against it, which is no more than it was legally required to do. As to the third factor – the public policy that "in choosing between innocent victims" taxpayers should not bear the burden of paying interest, see Flack, 461

_____

[10]As to deficiencies in the invoices, the district court specifically found that any deficiencies in the invoices were remedied by Blasland's submission of revised invoices, and the court calculated prejudgment interest only from the time those revised invoices were submitted. Thus, flaws in the invoices had no effect on the City's failure to pay during the time the interest-clock was running.

24

So. 2d at 84 – that factor does not apply here.  The City was not an "innocent victim," because it breached the contract. That distinguishes this case from Hallandale, where the court emphasized that the party seeking to recover prejudgment interest against the State did not have a contract with the State. Hallandale, 623 So. 2d at 479.  In this case, of course, the City and Blasland did have a contract.  Indeed, the dispute between them is primarily a breach of contract disagreement of the sort for which, as the district court noted, "interest is nothing more than compensation for loss."  Generally, in breach of contract cases the time value of money calls for awarding prejudgment interest.

That leaves the City's fourth, and most persuasive, equitable factor, which is that it had a well-founded malpractice claim against Blasland.  While the city was not an "innocent party," Blasland was not entirely innocent either; the jury found it guilty of professional malpractice.  It is true that professional malpractice is not the same as a failure to mitigate damages or unwarranted procedural delay, which are two of the equitable factors recognized in Hallandale.  623 So.2d at 480. However, it is somewhat like them because those two factors focus on the fault of the victim in either creating the damages or causing delay in recovering them.   Blasland's professional malpractice in performing some of its work under the contract played a role in precipitating the City's breach and in prolonging the City's refusal to pay

25

for the work that was properly done.   For that reason the delay in Blasland's getting the money it should have was partially Blasland's own fault.

Considering all of four factors together with the circumstances of this case, if we were deciding the matter initially we might deny prejudgment interest to Blasland altogether.   Or we might not.   That is not, however, the question before us.   Instead, the question is whether the district court's decision not to deny prejudgment interest altogether is within the range of legitimate choices open to that court given the applicable law and the circumstances of this case.   See Rasbury, 24 F.3d at 168.   We conclude that it is.

We turn now to the different question of whether the district court abused its discretion in not reducing the amount of prejudgment interest.   The City argues the sum on which the court awarded prejudgment interest should have been reduced by the amount the City was awarded on its counterclaim against Blasland for professional malpractice, an award that was wiped out by the setoff caused by payments from a different group of defendants in another case.   The district court noted this argument of the City's was "not unpersuasive, particularly because [Blasland] fortuitously escaped the consequences of its own negligence" by virtue of the setoff.   The court nonetheless concluded that prejudgment interest "should

26

rise and fall with the award itself," and so taxed interest on Blasland's entire award.

We agree with the district court that the City's argument on this point is strong. It is inequitable for Blasland to have its liability for botching a job fortuitously erased because of a setoff, and then demand interest on the portion of its judgment that would have been negated by an award against it but for the serendipitous setoff. Florida allows a court to take such equities into account, and neither the district court nor Blasland has suggested any good reason why Blasland should receive what amounts to interest on the damages its own negligence caused.

If the purpose of prejudgment interest is to provide the prevailing party with the time value of the money it should have had at the time it was wronged – to restore the party to an unwronged position – the only money that Blasland equitably should have had since the time it was wronged was the value of the award to it minus the value of the City's counterclaim award against it. Blasland is equitably entitled to prejudgment interest only on the net wrong it suffered, not the gross wrong. Setoff law dictates that Blasland recover the full amount of its award, but the law relating to prejudgment interest cares more for equitable considerations and does not require that Blasland's good fortune regarding the

setoff be increased by prejudgment interest on the amount of the setoff.   Blasland is not entitled to a windfall on its windfall.

Although awarding prejudgment interest to Blasland was within the legitimate range of choices open to the district court, awarding prejudgment interest for the full amount of the award was not.  The maximum amount on which prejudgment interest should have been awarded is the portion of Blasland's award it would have recovered if the City's counterclaim had been subtracted from that award instead of being erased by the setoff.   We will remand so that the district court can adjust the figures accordingly.

### III.   BLASLAND'S CROSS-APPEAL ISSUES

### A.   STATUTE OF LIMITATIONS

Blasland contends that the City's counterclaim for professional malpractice was barred by the statute of limitations, and that the district court erred in failing to grant Blasland's motion for judgment as a matter of law on that basis.[11]  Blasland raised the statute of limitations as an affirmative defense in its answer and included it in the parties' pretrial stipulation, but failed to raise that defense at trial or at any

---

[11] Our holding that the district court properly granted a setoff, which zeroed out the City's counterclaim award, does not moot this issue.  Because of our other holding that Blasland is not entitled to prejudgment interest to the extent of the City's counterclaim award, whether the City should have gotten that award to begin with does matter.

28

time before the entry of final judgment. Instead, after the district court had entered final judgment, Blasland filed a motion for judgment as a matter of law asserting the statute of limitations defense. The district court denied the motion, ruling that Blasland had waived the defense by not raising it earlier.

For a court to be obligated to consider a post-trial motion for judgment as a matter of law, the moving party must have made a motion for such a judgment under Rule 50(a) at the close of all the evidence. See SEC v. Adler, 137 F.3d 1325, 1331 n.18 (11th Cir. 1998); see also Austin-Westshore Constr. Co. v. Federated Dep't Stores, Inc., 934 F.2d 1217, 1222 (11th Cir. 1991); Fed. R. Civ. P. 50(b). By failing to make a motion for judgment as a matter of law at the close of all the evidence, Blasland forfeited its right to have the court consider its post-trial motion for judgment as a matter of law.

Even though the motion was procedurally improper, however, we may review the issue if the district court's failure to hold the City's counterclaim barred on statute of limitations grounds was plain error. That is not much of a reprieve for Blasland, though, because "[p]lain error review is an extremely stringent form of review." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999). One of the requirements of the plain error test is that the error, if any, must have been plain under existing law. Id.

Without cluttering up this opinion with an extraneous discussion of the niceties of Florida statute of limitations law, we focus on one point that is fatal to Blasland's argument. Even assuming that the City did bring its counterclaim after the statute of limitations had run, under Florida law that counterclaim would not be time-barred if it was a compulsory counterclaim for recoupment of money damages. See, e.g., Allie v. Ionata, 503 So.2d 1237, 1239 (Fla. 1987); cf. Rybovich Boat Works, Inc. v. Atkins, 585 So. 2d 270, 271 (Fla. 1991). Blasland does not contend otherwise. At a minimum, then, to show plain error Blasland would have to demonstrate that the City's counterclaim plainly was not compulsory. It has not done so.

A counterclaim is compulsory when it arises out of the same transaction or occurrence as the claim it is countering. See Londono v. Turkey Creek, Inc., 609 So. 2d 14, 19 (Fla. 1992). Both Blasland's claim and the City's counterclaim arose out of the same contract, out of related work, performed at the same site, during the same period of time. Both the claim and counterclaim made allegations about in-scope work and allegations about out-of-scope work – even if the particular allegations are different.[12] For these reasons, it is not plain that the City's

---

[12] The particular tasks for which Blasland sought payment under the contract were not exactly the same tasks that the City claimed Blasland had performed negligently. The district court recognized this when it said about the CERCLA claims and counterclaim that "[t]he work for which [Blasland] has not been paid is unrelated to the work forming the basis of the City's counterclaim for professional malpractice. . . ." Despite Blasland's contentions to the contrary,

30

counterclaim was not compulsory.  Because the plainness requirement of the plain error test is not met, we will not decide Blasland's statute of limitations contention on the unfiltered merits, i.e., whether the counterclaim was actually compulsory, which is the issue we would have decided if it had been properly raised and preserved in the district court.

## B.  CERCLA AND THE PAY-WHEN-PAID CLAUSE

Blasland's other cross-appeal contention is that the district court erred in preventing it from recovering money under CERCLA on the basis of the contract's pay-when-paid clause.  As we have mentioned, the contract between Blasland and the City contained what the parties referred to as a "pay-when-paid" clause, which stated that: "[Blasland] recognizes that CITY's obligation of payment of compensation is specifically contingent upon CITY's receipt of funding from the D.E.R. for payment of such fees, costs and expenses of [Blasland]."  The City was not reimbursed by DER for approximately $110,000 of the work done by Blasland.  The pay-when-paid clause clearly prevented Blasland from recovering that money in a suit for breach of the contract, because it specifically and explicitly made the City's contractual liability contingent on DER reimbursement.  Blasland also

however, the court did not make that observation in the context of conducting a compulsory-counterclaim analysis, but instead in the context of analyzing whether Blasland's own negligence prevented it from recovering under CERCLA.   That is a different matter.

31

sought that money, however, in its CERCLA claim against the City. The district court found that the pay-when-paid clause also prevented Blasland from recovering the $110,000 under CERCLA. According to the district court, the contractual pay-when-paid clause provided the City with a valid defense from CERCLA liability to Blasland to the extent that the City did not receive funding from D.E.R. for that work. We disagree.

To understand our reasoning, it is necessary to understand the CERCLA liability scheme. CERCLA provides two possible avenues for a party to recover monies it spends cleaning up a polluted site. One is a suit for direct cost recovery based on section 107(a) of the statute. 42 U.S.C. § 9607. Direct cost recovery is available only to so-called "innocent parties," that is, "[p]arties who are not themselves liable or potentially liable for response costs under § 107(a) of CERCLA . . . ." Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1513 (11th Cir. 1996). In most instances, the only "innocent party" is the government agency that is forced to cleanup the land: "the typical section 107(a) action is brought by a governmental plaintiff that has expended taxpayer dollars in cleaning up a facility." Id. It "is possible that a private party may qualify as an 'innocent' plaintiff enabling it to bring a cost recovery action based on Section 107(a) alone ," id., but, in practice, it is rare. Kaufman and Broad-South Bay v.

Unisys Corp., 868 F. Supp 1212, 1216 (N.D. Cal. 1994) ("a CERCLA plaintiff, other than the government, will rarely be 'innocent' and thus permitted to sue under [section 107]"). But see OHM Remediation Services v. Evans Cooperage Co., 116 F.3d 1574, 1581-82 (5th Cir. 1997) (allowing a private contractor to proceed as a plaintiff under section 107(a)). In this case, the district court concluded after the bench trial of the CERCLA claims that Blasland was an "innocent party" entitled to bring a direct cost recovery action. The City has not contested that conclusion on appeal, so we will assume for the purpose of reviewing the district court's decision that Blasland is an innocent party. See Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994).

The second avenue of recovery under CERCLA is a contribution suit under section 113 of the statute. 42 U.S.C. § 9613(f). A section 113 suit allows "guilty" parties– "responsible parties" in CERCLA-decision jargon – who are liable for some of the cleanup costs, but have paid more than their fair share of those costs, to recover the amount of their excess payments from other parties who are also responsible for the pollution. See Redwing Carriers, 94 F.3d at 1513. Contribution suits are the only avenue of recovery available to a responsible party, which under CERCLA includes an owner of a facility where waste was dumped, an operator of a facility, an "arranger" of the disposal or treatment of hazardous

33

waste at a facility, or an acceptor of waste for transportation or disposal. 42 U.S.C. § 9607(a). In this case, the City, as owner of the Munisport site, was a responsible party.

In either a section 107 direct cost recovery action or a section 113 contribution action, the elements of the plaintiff's prima facie case are the same. To establish one, the plaintiff must show: 1) that the site is a CERCLA "facility"; 2) that there was a release or threatened relase of a hazardous substance; 3) which caused the plaintiff to incur response costs consistent with the National Contingency Plan; and 4) the defendant is a statutorily liable person, i.e., a responsible party, as described above. Redwing Carriers, 94 F.3d at 1496-97. In this case, the district court found that Blasland had proved its prima facie case, and the City does not contest that determination. The dispute is not over the requirements of the prima facie case, but instead over the availability of defenses.

Once a prima facie case is proven there are, according to section 107(a) of the statute, three and only three defenses to liability. Specifically, that section provides that liability is "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a) (emphasis added). The defenses set forth in subsection (b) are that the pollution was caused entirely by either: 1) an act of God; 2) an act of war; or 3) an

34

act of a third party unconnected to the defendant. Id. § 9607(b). It is undisputed that none of the 107(b) defenses apply to this case.

Section 107, read by itself, indicates that the only defenses to a CERCLA cost recovery action are the three defenses listed in section 107(b). The Sixth Circuit has said that section 107(b) "set[s] forth the universe of defenses to section 107 liability." Velsicol Chem. Corp. v. Enenco, Inc., 9 F.3d 524, 530 (6th Cir. 1993). Yet the exclusivity language of section 107(a) is belied by a passel of defenses explicitly provided in other sections of CERCLA. There are statutes of limitations, each applicable to a different type of cost recovery claim. 42 U.S.C. § 9613(g). See Smith Land & Imp. Corp. v. Celotex Corp., 851 F.2d 86, 89 (3d Cir. 1988). And various specific sorts of substances are exempted from the coverage of the statute. See, e.g., 42 U.S.C. § 9601(14) (petroleum exclusion); 42 U.S.C. § 9607(i) (pesticide exclusion). So, too, are secured creditors who might otherwise be considered "owners" under CERCLA, 42 U.S.C. § 9601(20)(E)(1), and "innocent landowners," 42 U.S.C. § 9601(35). And, in contribution suits, the defendant may escape liability either by virtue of an indemnification or a hold harmless agreement with the plaintiff, 42 U.S.C. § 9607(e), or by proving it has already settled its liability to the government, see 42 U.S.C. § 9613(f)(2). If, as the Sixth Circuit said, section 107(b) sets out the "universe of defenses" to

35

CERCLA liability, then the statute contains alternate universes. The existence of additional enumerated CERCLA defenses elsewhere in the statute contradicts section 107(a)'s statement that section 107(b) provides the exclusive set of defenses to CERCLA. However, the pay-when-paid clause does not fall into any of these other enumerated defenses either.[13]

Instead, the pay-when-paid clause at issue in this case is, or at least is closely akin to, an equitable defense. The City claims that because Blasland agreed that the City's contractual liability would be contingent on DER reimbursement, Blasland should not be allowed to conduct an end-run around the contract using CERCLA. This sounds like an equitable estoppel argument that runs along the following lines: Although Blasland did not release the City from CERCLA liability, it did release the City from contractual liability, and it would be unfair to allow Blasland to circumvent that release with a CERCLA suit. The City claims its pay-when-paid defense is really a legal not an equitable argument, and that not

---

[13]The City suggests that its contractual pay-when-paid clause is similar enough to either a consent decree or release, which are CERCLA-enumerated ways of resolving liability, to be enforceable under CERCLA. It is true that under CERCLA the government (the usual "innocent party") can enter into a consent decree with a polluter and thereafter be bound by that settlement. It also is true that CERCLA expressly allows responsible parties to allocate liability among themselves via releases and indemnification agreements. The City claims that, just as CERCLA makes consent decrees and releases effective to release liability, its contract with Blasland should be effective to release the City's liability. But the pay when-paid-clause did not purport to release CERCLA liability, or any liability other than contractual liability; it speaks of the City's obligation to pay "compensation" under the contract not of liability for contribution under CERCLA. It therefore is not one of the defenses based on release of liability enumerated in CERCLA itself.

enforcing the clause would permit Blasland to retain the benefits of its contract while disregarding those burdens it now finds undesirable. Legally speaking, this is incorrect, because Blasland never assumed the "burden" of foregoing CERCLA recovery; the terms of the clause do not mention CERCLA liability. It is only in equity that the City's argument has a good ring to it. Thus the City's invocation of the pay-when-paid clause is, or is at least materially similar to, an equitable defense.

A majority of the circuits that have considered the issue have found that 107(a) bars defendants in CERCLA suits from raising equitable defenses to liability. See Town of Munster, Ind. v. Sherwin-Williams Co., 27 F.3d 1268, 1270 (7th Cir. 1994) ("CERCLA does not permit equitable defenses to § 107 liability"); Velsicol, 9 F.3d at 530 (holding that the doctrine of laches may not bar a CERCLA cost recovery action); Gen. Electric v. Litton Indus. Automation Systems, 920 F.2d 1415, 1418 (8th Cir.1990) (holding that CERCLA does not provide for an unclean hands defense to liability), cert. denied, 499 U.S. 937, 111 S. Ct. 1390 (1991); Smith Land, 851 F.2d at 90 (concluding that under CERCLA the doctrine of caveat emptor is not a defense to liability for contribution).

Courts denying the availability of equitable defenses to CERCLA liability have done so for two reasons. The first, of course, is the plain language of section

107(a) which explicitly limits defenses to those three enumerated in section 107(b). See, e.g., Veliscol, 9 F.3d at 530; Town of Munster, 27 F.3d at 1271. The second reason is the Congressional intent behind the statute, which was to have pollution cleaned up as quickly as possible and to see that the responsible polluters are made to pay for the cleanup. See Monarch Tile, Inc. v. City of Florence, 212 F.3d 1219, 1221 (11th Cir. 2000) ("CERCLA is a broad, remedial statute animated by a sweeping purpose to ensure that those responsible for contaminating American soil shoulder the costs of undoing that environmental damage."); United States v. Navistar Intern. Transp. Corp., 152 F.3d 702, 707 n.7 (7th Cir. 1998) (recognizing that one of CERCLA's purposes is "prompt clean up of polluted cites") (citation omitted)). Recognizing non-enumerated defenses to CERCLA liability would frustrate Congress's intent by giving responsible parties an incentive to delay cleaning up a polluted site, in the hopes of escaping liability and passing the buck(s) to someone else. For these two reasons, courts have generally rejected attempts to impress equitable defenses into the ranks of defenses to CERCLA liability.

We agree that CERCLA's section 107(a) bars equitable defenses. Section 107(a) imposes liability "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this chapter." Although

this statement may be contradicted by other defenses provided elsewhere in the statute, that does not mean this Court has the same power as Congress to create exceptions to section 107(a)'s bar on other defenses based on our own sense of what would be good policy. The plain language of section 107 indicates that Congress wanted defenses to suits brought by an innocent party to be narrowly circumscribed. Recognizing unenumerated equitable defenses would widen too far the circle of exemption from CERCLA liability, and invite defendants in suits brought by an innocent party (usually the EPA) to raise such defenses in the hopes of persuading the court that although the defenses were not enumerated in CERCLA, they should have been. Therefore, defenses, including equitable ones, that are not enumerated in the statute cannot thwart the imposition of CERCLA liability.[14]

---

[14]We recognize that the Seventh Circuit has speculated in dicta that, while CERCLA does bar equitable defenses, there still may be viable defenses to CERCLA liability that are not enumerated either in section 107(b) or anywhere else in the statute. Town of Munster, 27 F.3d at 1272. As the Seventh Circuit explained:

> [T]hough we need not (and do not) decide the matter, we doubt seriously that res judicata, collateral estoppel, accord and satisfaction, and statutes of limitation are "defenses" as CERCLA employs that term. While the statute does not define the term, we read the defenses enumerated in §§ 107(b) as addressing the causation element of the underlying tort and negating the plaintiff's prima facie showing of liability. A defendant who claims that he already has litigated the same matter (res judicata), reached agreement on and paid for its damages (accord and satisfaction), or was not sued within the relevant limitations period does not contest whether the plaintiff can establish liability under §§ 107; rather he interposes a legal or statutory shield against having to litigate (or relitigate) the issue or case.

Id. (citations omitted). In this case, the district court looked to Town of Munster as persuasive

Section 107(a) bars the assertion of all equitable defenses to CERCLA liability.  The pay-when-paid clause is more like an impermissible equitable defense than any of the permissible defenses enumerated in CERCLA.  We therefore hold that the pay-when-paid clause in the contract between Blasland and the City was not enforceable under CERCLA to bar Blasland from recovering under that statute any money owed it by the City for which the City had not been paid by DER.[15]   Thus the district court erred in deciding that the pay-when-paid clause in the contract between Blasland and the City prevented Blasland from recovering the $110,000 that it was owed by the City, but for which the City had not been repaid by DER.

This result may seem unfair, but, as the Eighth Circuit has said in discussing 107(a)'s exclusion of non-enumerated defenses:  "We realize this [provision] can and does lead to harsh results, but we are obliged to enforce the law as Congress

authority to guide its analysis of the pay-when-paid clause, and found that the clause was just the sort of viable "legal shield" defense envisioned by the Town of Munster court.  We offer no views on the persuasiveness of the Seventh Circuit's musings, however, because they are irrelevant to this case.   The pay-when-paid clause is simply not a defense-in-bar (or "legal shield") of the sort that the Seventh Circuit suggested may still be available under CERCLA.

[15]Had this been a contribution suit between two responsible parties, the pay-when-paid clause might well have been considered in deciding a equitable allocation of liability between Blasland and the City.  See Redwing Carriers, 94 F.3d at 1513.  We need not decide that, however, because the district court found Blasland was an innocent party, not within any of CERCLA's categories of liable or potentially liable parties, and the City does not challenge that ruling.  Therefore, the district court could not equitably allocate liability between the City, a responsible party, and Blasland, an innocent party.

has written it, unless, of course, such law violates some provision of the Constitution." United States v. Mexico Feed and Seed Co., 980 F.2d 478, 484 n.5 (8th Cir. 1992); see also United States v. Price, 577 F. Supp. 1103, 1114 (D. N.J. 1983) ("Though strict liability may impose harsh results on certain defendants, it is the most equitable solution in view of the alternative–forcing those who bear no responsibility for causing the damage . . . to shoulder the full cost of the clean up."). The result may be particularly harsh in a case like this one, which is not the normal CERCLA "innocent plaintiff" case. Blasland was not cleaning up the site with taxpayer funds as a public service; it was doing so for profit, and it did not even do an entirely competent job. Nonetheless, the result we reach is compelled by the combination of the district court's uncontested finding that Blasland was an innocent party and CERCLA's provisions on the availability of defenses.

## IV. CONCLUSION

The district court's judgment is AFFIRMED, except in these two respects: (1) the award of prejudgment interest is REVERSED insofar as it awards interest that Blasland would not have recovered if there had not been a setoff of the City's counterclaim award; and (2) its decision on Blasland's CERCLA claim is REVERSED insofar as it relied on the contractual pay-when-paid clause as a

41

ground for denying Blasland recovery of its CERCLA costs from the City. The

case is REMANDED for further proceedings consistent with this opinion.