375 So.2d 26 (1979)
HARTFORD ACCIDENT AND INDEMNITY COMPANY and Royal Palm Beach Colony, Inc., Patriot General Insurance Company, Middlesex Insurance Company, and Gulfstream Lease-a-Car Co., Appellants,
v.
Rita Ann KELLMAN and Jack Kellman, Mary Brady, et al., Appellees.
CONTINENTAL CASUALTY COMPANY, Appellant,
v.
Rita Ann KELLMAN, Jack Kellman and Mary Brady, et al., Appellees.
Nos. 78-1367, 78-1381 and 78-1385.
District Court of Appeal of Florida, Third District.
September 11, 1979.
Rehearing Denied October 12, 1979.
*27 Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Miami, for Hartford and Royal.
Peters, Pickle, Flynn, Niemoeller, Stieglitz & Hart, Jeanne Heyward, Miami, for Continental.
Bradford, Williams, McKay, Kimbrell, Hamann & Jennings and Michael K. McLemore, Miami, for Gulfstream, Patriot & Middlesex.
Before PEARSON, HENDRY and BARKDULL, JJ.
PEARSON, Judge.
These consolidated appeals are from a final judgment on a number of insurance company cross-claims. The final judgment set out the priority of six separate policies issued by four insurance companies and thus determined the order of the responsibility for payment of the judgment received by the injured plaintiff. The happy circumstance is that the injured party has received payment, and the unhappy circumstance is that the insurance companies are now contending with one another over their respective rights under their policies.[1]
The trial judge entered a judgment on the cross-claims as follows:
"1. On the claims of the Plaintiffs against the Codefendants, HERBERT LARRY KAPLAN, ROYAL PALM BEACH COLONY, INC., and GULFSTREAM LEASE-A-CAR COMPANY, the coverage limits of the insurers are available in the following order of priority:
a) ALLSTATE INSURANCE COMPANY affords the primary insurance coverage in the amount of its limits of $100,000 per person/$300,000 per accident;
b) HARTFORD ACCIDENT AND INDEMNITY COMPANY affords the second layer of insurance coverage in the amount of its limits of $100,000 per person/$300,000 per accident;
c) PATRIOT GENERAL INSURANCE COMPANY affords the third layer of insurance coverage in the amount of its limits of $100,000 per person/$300,000 per accident;

*28 d) CONTINENTAL CASUALTY COMPANY affords the fourth layer of insurance coverage under its policy issued to HERBERT LARRY KAPLAN in the amount of its single limit of $1,000,000;
e) CONTINENTAL CASUALTY COMPANY affords the fifth layer of insurance coverage under its policy issued to ROYAL PALM BEACH COLONY, INC., in the amount of its single limit of $2,000,000;
f) The AMERICAN HOME ASSURANCE COMPANY affords the sixth layer of insurance coverage in the amount of its single limit of $3,000,000;
g) MIDDLESEX MUTUAL INSURANCE COMPANY affords the seventh layer of insurance coverage in the amount of its single limit of $1,000,000."
All of the insurance companies except Allstate have appealed and assigned different reasons that the finding of the trial judge was wrong as a matter of law. The unfortunate circumstance on such an appeal is that there is no appellee presenting the law which supports the trial judge. We will search for the supporting law. In order to understand the positions taken by the parties, we must examine the facts out of which the litigation arose.

I.
Defendant Herbert Kaplan was driving down the street one night when he rear-ended a Mustang automobile in front of him. The gas tank of the Mustang ruptured and exploded, causing serious burn injuries to the two occupants of that car. It should be noted that Ford Motor Company was a defendant, although it is not involved in this appeal.
The essential problem is that at the time of the accident, Kaplan had three separate legal identities, in each of which he was covered by primary and excess insurance for a total of six policies. This appeal concerns the order of priority of the policies.
Kaplan was employed by Royal Palm Beach Colony, Inc., as its President. On the evening in question, he had dinner at a restaurant on Biscayne Boulevard with a former employee of Royal Palm Beach Colony. The purpose of the meeting was to wind up their business relationship. After dinner, Kaplan went to see the former employee's apartment, and upon leaving the apartment, he got into his leased vehicle (which he used for company business purposes on a 24-month lease from Gulfstream Lease-A-Car) intending to go to his home in the southwest section of Miami. Travelling south on Biscayne Boulevard in the rain, he rear-ended the plaintiff's vehicle stopped for a traffic light at Northeast 105th Street.
In his three identities, Kaplan (1) was the driver of the car, and as such he had a primary and excess policy on the car; (2) was the lessee of the car, for which there was coverage under the leasing company's primary and excess policies; and (3) was in the course and scope of his employment, and as employee, was covered under his employer's policy. The following sketch may be helpful:

 Kaplan's Three Legal Identities[2]
 (1) Driver
 (2) Lessee
 (3) Employee
*29 (1) Driver (2) Lessee (3) Employee
 Personal Automobile Policies of Gulfstream Policies of Employer Royal
 Policies on Car Lease-A-Car Palm Beach Colony, Inc.
 (a) Primary  (a) Primary  (a) Primary 
 Allstate Patriot Gen'l Hartford
 $100,000/$300,000 $100,000/$300,000 $100,000/$300,000
 (b) Excess  (b) Excess  (b) Excess 
 Continental Middlesex Continental
 $1,000,000 $1,000,000 $2,000,000

II.

CONTINENTAL
The appeal of Continental Casualty Company claims that the court erred in holding that its policies were prior to the policy issued by Middlesex Insurance Company. It is urged that in determining the "total policy insuring intent,"[3] a specific clause takes precedence over a general clause and, therefore, that because Continental's policies contain an excess liability clause, they are, in fact, excess to all other insurance. It is also argued that because Continental's policies are general liability policies, they should not be reached until all automobile liability policies are exhausted.

HARTFORD[4]
The trial judge found Hartford's policy next in order of responsibility for payment after the admitted responsibility of Allstate. Hartford insured the tortfeasor's employer with a primary policy with limits of $100,000/$300,000. There is evidence from which the trial judge, as the finder of fact, could have found that the employee, Kaplan, was driving a company car on company business at the time of the accident. We must conclude that it was on this basis that the trial judge determined that Hartford, as the employer's primary coverage insurer, should follow Allstate, the driver's primary coverage insurer, before resort to any excess coverage policies. Hartford contends that this holding is wrong because the driver is primarily liable and, therefore, the carriers for the driver, i.e., Allstate (the driver's primary coverage insurer) and Continental (the driver's excess coverage insurer) must respond before any insurer representing a vicariously liable entity is required to respond.

PATRIOT
The trial judge found that Patriot's policy insuring the owner of the leased car, Gulfstream Lease-A-Car, was next in order of priority after Allstate and Hartford. This determination was apparently made upon the basis that (1) an owner is next in line of liability after a driver, or (2) that the policy properly construed covered the driver as an insured, thereby making it a primary policy to be exhausted before any excess policy is reached. Patriot and Middlesex have filed a joint brief in which they join in Hartford's position that all of the insurance of a driver must be exhausted before resort to the insurance furnished by any other entity. In addition, they argue that Continental's excess policy was properly placed ahead of the Middlesex's excess policy because that policy contains a contingent liability endorsement.

III.
It is apparent from the settlement that has been reached (n. 1, supra) that the *30 amount the carriers will need to pay will not exceed the range of $500,000. Therefore, the crucial question is: Who comes next in priority after Allstate's $200,000 primary coverage is exhausted? We think that the governing principle is that followed in Truck Discount Corporation v. Serrano, 362 So.2d 340 (Fla. 1st DCA 1978); and National Indemnity Co. v. Home Insurance Co., 345 So.2d 1077 (Fla. 3d DCA 1977). In each of these cases, it was determined that the insurer of a driver who is an active tortfeasor had primary responsibility for the payment of the injured party. This is based upon the fact that the owner of a dangerous instrumentality is ordinarily entitled to indemnity from his permittee.
Based upon this principle, Continental's policy which covered the driver, Kaplan, as a personal excess liability policy should come into play before the policies of Hartford and Patriot. Hartford's policy is an employer's policy and, although the employer is responsible under the doctrine of respondeat superior, the employer is entitled to indemnity against a negligent employee. See Grand Union Company v. Prudential Building Maintenance Corp., 226 So.2d 117 (Fla. 3d DCA 1969). Patriot's policy is an owner's policy and, as stated above, an owner is entitled to indemnification from a negligent permittee.
We do not find a basis for a different decision in Continental's argument that because its policy is a general liability excess policy, all automobile liability policies must first be exhausted before its policy is reached. Continental refers us to no Florida case directly supporting its argument. There are numerous Florida cases holding that in a single contract the specific provision will govern over the general provision. We do not think, however, that this general proposition can be made the basis for an overriding of the principle that in automobile liability cases the driver's liability is primary. Accordingly, we hold that the Continental excess policy issued to the driver, Kaplan, is just what it says it is, an excess liability policy taking effect after the exhaustion of the primary liability policy issued by Allstate.
In turning to the argument of Hartford that its liability should be pro rated with that of Patriot because both are vicariously liable, we are not convinced of error. The employer (Hartford's insured) is directly liable under the doctrine of respondeat superior, and the fact that Hartford's policy does not name the employee as an insured is of no importance. In the order of liability, the trial judge properly placed the employer immediately after the driver in responsibility.
The companies involved have relied on the other insurance and excess clauses in their contracts in arguing for their respective positions. We have not followed these arguments in this decision because we think that the order of responsibility is determinable through the basic principle that the driver is responsible first. We are aware of the following holding of the Supreme Court of Florida in Insurance Company of North America v. Avis Rent-A-Car System, Inc., 348 So.2d 1149, 1154 (Fla. 1977):
"We hold that the public policy of the state was satisfied in this case when the injured's beneficiaries were compensated by the vehicle's owner for the negligent operation of a rented vehicle. The parties were free to contract between themselves to shift the burden of loss so long as they met the requirements of law, and in this case there is no suggestion that those requirements were not met."
We simply find it unnecessary, as did the trial judge, to decide this appeal upon the particular provision of any policy. In other words, within the class of responsibility, the policy provisions should be considered, but no provision cited is sufficient to change that policy's class.
In considering the argument of Patriot and Middlesex, we have found error in the failure of the trial judge to place Continental's excess policy insuring the driver ahead of Patriot's policy insuring the owner-lessor of the automobile.
We have considered all other points presented, and we find no error under any other argument advanced.
*31 We conclude that the trial judge erred in determining the order of responsibility for the payment of the judgment, and we reverse the judgment in part and remand the cause for the entry of an amended judgment setting forth the order of availability as follows:
1. On the claims of the Plaintiffs against the Codefendants, HERBERT LARRY KAPLAN, ROYAL PALM BEACH COLONY, INC., and GULFSTREAM LEASE-A-CAR COMPANY, the coverage limits of the insurers are available in the following order of priority:
a) ALLSTATE INSURANCE COMPANY affords the primary insurance coverage in the amount of its limits of $100,000 per person/$300,000 per accident;
b) CONTINENTAL CASUALTY COMPANY affords the second layer of insurance coverage under its policy issued to HERBERT LARRY KAPLAN in the amount of its single limit of $1,000,000;
c) HARTFORD ACCIDENT AND INDEMNITY COMPANY affords the third layer of insurance coverage in the amount of its limits of $100,000 per person/$300,000 per accident;
d) PATRIOT GENERAL INSURANCE COMPANY affords the fourth layer of insurance coverage in the amount of its limits of $100,000 per person/$300,000 per accident;
e) CONTINENTAL CASUALTY COMPANY affords the fifth layer of insurance coverage under its policy issued to ROYAL PALM BEACH COLONY, INC., in the amount of its single limit of $2,000,000;
f) The AMERICAN HOME ASSURANCE COMPANY affords the sixth layer of insurance coverage in the amount of its single limit of $3,000,000;
g) MIDDLESEX MUTUAL INSURANCE COMPANY affords the seventh layer of insurance coverage in the amount of its single limit of $1,000,000.
Reversed and remanded.
NOTES
[1] In January of 1979, Allstate Insurance Company acknowledged that it afforded primary coverage in the full amount of its coverage of $100,000 per person for a total of $200,000 for the two claimants. Ford Motor Company settled its liability for $500,000. The remaining three companies each contributed $100,000 without prejudice to litigating the priority of their coverage.
[2] KAPLAN
Allstate Insurance Company wrote an automobile liability policy for Mr. Kaplan on the automobile involved in the accident. The policy has limits of $100,000/$300,000.
Continental Casualty Company (CNA) wrote a personal umbrella excess liability policy for Kaplan in the amount of $1,000,000.
OWNER: LEASE CAR COMPANY
Patriot General Insurance Company insured Gulfstream Lease-A-Car under a comprehensive automobile leasing liability policy with $100,000$61$300,000 limits.
Middlesex Mutual Insurance Company wrote an excess policy for Gulfstream Lease-A-Car with $1,000,000 single limits in excess of Patriot General's policy. (Patriot General and Middlesex are part of the same corporate "group").
EMPLOYER OF DRIVER
Hartford Accident and Indemnity Company insured Royal Palm Beach Colony, Inc., with limits of $100,000/$300,000.
Continental Casualty Company (CNA) wrote an excess policy for Royal Palm Beach Colony, Inc., with limits of $1,000,000 for Kaplan and $2,000,000 for Royal Palm Beach Colony, Inc.
[3] See Bettenburg v. Employers Liability Assurance Corporation, Ltd., 350 F. Supp. 873 (D.Minn. 1972).
[4] These statements of position are by no means exhaustive but are given to facilitate an understanding of the main position taken.