450 So.2d 1233 (1984)
SENTRY INSURANCE COMPANY, Appellant,
v.
AETNA INSURANCE COMPANY, Appellee.
No. 83-529.
District Court of Appeal of Florida, Second District.
June 1, 1984.
*1234 Michael S. Rywant of Prugh & Rywant, Tampa, for appellant.
Charles W. Hall and Mark E. Hungate of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellee.
OTT, Chief Judge.
This case involves cross intervenor complaints for indemnification between insurers for the loss resulting from the negligent operation of an automobile. The trial court ruled that the insurer of the driver's employer, Sentry Insurance Company, provided primary coverage ahead of coverage provided by the insurer of the vehicle's owner, Aetna Insurance Company. We vacate the trial court's grant of final summary judgment and remand for proceedings not inconsistent with this opinion.
Kirby Gould, the manager of S-R-D Corporation and Risser Oil Corporation, d/b/a Red Carpet Car Wash ("S-R-D"), took his personal automobile to a shop for repair. When the repairs were complete, an employee of the automobile repair shop returned the vehicle to the car wash. At that time, Kirby Gould instructed Rebecca Gould, Kirby's daughter and also an employee of S-R-D, to drive the repairman back to his place of employment in the newly repaired vehicle. During this excursion, the vehicle driven by Rebecca Gould struck a vehicle driven by Mary Ann Pultorak. Mary Ann Pultorak asserted her claim against Rebecca Gould as driver, Kirby Gould as owner, and S-R-D as Rebecca's employer.
At the time of the accident, Rebecca Gould had an automobile liability insurance policy with the Travelers Insurance Company with coverage limits of $10,000 per person/$20,000 per accident. Kirby Gould's vehicle was insured by Aetna with coverage limits of $100,000 per person/$300,000 per accident. S-R-D carried a comprehensive insurance policy package with Sentry with large single limit coverage.
Pultorak's personal injury suit against Rebecca Gould, Kirby Gould, and S-R-D was ultimately settled for a total of $91,500. Aetna and Sentry each contributed $45,750 to the settlement. A release was executed by Pultorak as to all claims against Rebecca Gould, Kirby Gould, S-R-D, Travelers, Aetna, and Sentry.
Following the settlement, Aetna and Sentry intervened in the lawsuit as party defendants. Aetna and Sentry filed cross intervenor complaints seeking a judicial declaration of their respective rights, liabilities, and obligations under their policies and indemnification from the other insurers.[1] Motions for summary judgment were filed and each insurer alleged that there existed no genuine issues of fact. In addition, based on the holding of Hartford Accident and Indemnity Co. v. Kellman, 375 So.2d 26 (Fla. 3d DCA 1979), each insurer alleged that it was entitled to be excused from any contribution as a matter of law. Without written explanation or findings, the trial court entered an order granting Aetna's motion for summary judgment and denying Sentry's. In effect, the final judgment requires Sentry to refund Aetna's contribution to the settlement.
On appeal, as in the trial court, each insurer argues that Hartford controls the instant case and requires a finding that it is entitled to full indemnity from the other insurer. Thus, close scrutiny of Hartford is required.
In Hartford, Herbert Kaplan drove an automobile into the rear end of a Ford Mustang. The gas tank of the Mustang *1235 ruptured and exploded, causing serious burn injuries to the two occupants of the car. A $1,000,000 settlement was achieved in the ensuing personal injury suit by the Mustang occupants. Ford Motor Company contributed $500,000 of this sum. Kaplan's personal automobile liability insurer, Allstate, paid $200,000, admitting its position as the primary insurer. The remaining $300,000 was contributed by the insurer of the leasing company, the insurer of Kaplan's employer, and Kaplan's personal excess carrier. All the insurers reserved the right to litigate the order of priority of the various policies providing coverage for the loss. The trial court determined the order of priority and all the insurers, except Allstate, appealed and assigned different errors to the trial court's determination.
On appeal in Hartford, the Third District Court of Appeal noted that Kaplan had three separate legal identities at the time of the accident: he was the driver of the car; he was the lessee of the car; he was an employee acting within the course and scope of his employment. There was both a primary and an excess insurer for each of his identities. In an attempt to solve the priority puzzle, the Third District Court of Appeal ranked the insurers in terms of priority based on their insured's position or relationship to the vehicle involved in the accident, to wit: driver  employer  lessor/owner. The policies covering Kaplan as a driver were ranked first based on the common law rule that an insurer of a driver who is an active tortfeasor has primary responsibility for the payment to the injured party. The policies covering Kaplan's employer were ranked next in priority. These policies were ranked ahead of the lessor/owner's policies because the employer was directly liable under the doctrine of respondeat superior (its employee being actively engaged in its affairs at the time of the accident) while the owner was only liable by operation of law. The policies covering the lessor/owner  the most remote  were therefore ranked last. As to the effect of "other insurance" clauses in the insurance contracts, the court stated that "within the class of responsibility, the policy provisions should be considered, but no provision cited is sufficient to change that policy's class." Id., at 30.
In the instant case, Sentry's position is that Hartford places Aetna ahead of it in terms of priority because, when properly construed, Aetna's policy is a driver's policy as it covered Rebecca Gould as an additional insured when she drove her father's vehicle with his permission. Aetna disagrees, asserting that its policy is an owner's policy like the leasing company's policy in Hartford and therefore last in terms of priority.
We decline to apply the rationale of Hartford in the instant case for several reasons. First, the holding in Hartford relative to the rank of the employer's and lessor/owner's policies vis-a-vis each other constitutes obiter dictum. A careful reading of the case discloses that disposition of the controversy was complete when the court ranked the driver's primary and excess policies first, as the remaining settlement amount ($300,000) was completely satisfied within the driver's excess carrier's policy limits of $1,000,000. Second, although close, the facts of Hartford are distinguishable from those in the instant case. There, the lessor/owner was a distant leasing company. Here, the owner had a more active role in the affair, having presumed upon his position with his employer to instruct his daughter and subordinate employee to use the vehicle for his own purposes. Finally, Hartford determined responsibility by analyzing each party's relationship to the accident without regard to the contracts of insurance. The court refused to give effect to the "other insurance" clauses in the sundry policies. In contrast, this court has historically examined such policy provisions and given them full force and effect wherever possible. See Auto-Owners Insurance Co. v. Palm Beach County, 157 So.2d 820 (Fla. 2d DCA 1963). In summary, we believe that the Third District Court of Appeal in Hartford reached what, under the facts of that case, may be considered an equitable and reasonable result. However, at this *1236 time, we are not prepared to adopt an across-the-board policy of ranking the order of insurers' responsibilities for payment of judgments to injured parties on the basis of each carrier's insured's status (i.e., driver  employer  lessor/owner), as proposed by our sister court.
In cases where more than one insurer's policy provides coverage for a loss, it is appropriate to review the insurance contracts to see if the documents address the "ranking" or contribution of other insurers. See Insurance Company of North America v. Avis Rent-A-Car System, Inc., 348 So.2d 1149 (Fla. 1977). There are three principal kinds of so-called "other insurance" clauses: (1) pro rata or proportionate recovery clause; (2) excess insurance clause; (3) escape or no liability clause. Auto-Owners, supra, at 822. If applicable "other insurance" clauses are contained in the contracts and the contracts otherwise satisfy the requirements of law, we believe that the priorities among the insurers should be decided by reference to the provisions in the respective policies. See Insurance Company of North America; Auto-Owners.
The trial court apparently granted final summary judgment in Aetna's favor based upon its interpretation of Hartford. Because we decline to adopt the rationale of our sister court, the trial court's grant of final summary judgment must be vacated. The case is remanded for further proceedings not inconsistent with this opinion.
REVERSED and REMANDED.
BOARDMAN and RYDER, JJ., concur.
NOTES
[1] Travelers was named in the intervenor complaints as an intervenor defendant. The insurance carrier removed itself from the controversy by contributing its policy limits, $10,000, to Aetna and Sentry.