[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13495

_____

GEMINI INSURANCE COMPANY,

Plaintiff-Appellant-Cross Appellee,

*versus*

ZURICH AMERICAN INSURANCE COMPANY,

Defendant-Appellee-Cross Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-02052-TPB-SPF

_____

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

JORDAN, Circuit Judge:

This is a dispute between two insurance companies—Gemini and Zurich—over what share of a $2 million settlement each is required to pay. The district court entered judgment for Gemini, ordering that Zurich pay $500,000 plus prejudgment interest. Both parties appealed, with Gemini seeking another $500,000 and Zurich challenging the award of prejudgment interest. Following oral argument, we reverse on Gemini's appeal and remand with respect to the calculation of prejudgment interest.

## I

The parties stipulated to the facts set out below. *See generally* D.E. 40.

## A

The underlying claim arose from the death of Josue Vallejo, who was struck by a tractor-trailer operated by an employee of FSR Trucking, Inc. FSR leased the tractor from Ryder Truck Rental, and the trailer from Commercial Trailer Leasing. Zurich insured FSR, through its coverage of Commercial, for $1 million. Gemini also insured FSR for $3 million.

The Vallejo claim settled for $3 million, of which Gemini contributed $2 million. Ryder's insurance company, which is not a party to this appeal, contributed the other $1 million. Gemini and Zurich agree that they each owe a share of the $2 million, but dispute how much each one must pay. Under Gemini's theory, they

each owe $1 million. Under Zurich's theory, they each owe their *pro rata* share, which is $500,000 for Zurich and $1.5 million for Gemini.

The different theories of coverage turn on the application of the two policies' "other insurance" clauses, which generally function to apportion coverage when there is overlapping insurance. Gemini argues that its policy is excess to Zurich's, while Zurich argues that the policies attach at the same level and thus trigger *pro rata* contribution. All agree that Florida law governs.

**B**

In August of 2021, Gemini sued Zurich for a declaratory judgment in its favor and an award of $1 million plus interest under claims of contractual subrogation or equitable subrogation/contribution. On March 4, 2022, Zurich tendered $500,000 to Gemini to satisfy its *pro rata* share. Gemini, however, continued to litigate for the other $500,000 plus interest on the entire amount.

The district court granted Zurich's motion for summary judgment and denied Gemini's. The court adopted Zurich's theory that two policies were "mutually repugnant" such that each insurer owed only its *pro rata* share. As noted, by that time, Zurich had already tendered its *pro rata* share to Gemini. The court nevertheless entered judgment in favor of Gemini because it was the prevailing party. The court reasoned that, as the prevailing party, Gemini was entitled to prejudgment interest as a matter of law unless certain equitable factors weighed against that general rule. Finding that the equities weighed in favor of Gemini, the court

awarded Gemini prejudgment interest on the $500,000 from February 7, 2019 (when Gemini paid $2 million to settle the underlying claim) to March 4, 2022 (when Zurich tendered its $500,000 *pro rata* share to Gemini).

Gemini appealed to obtain the other $500,000, and Zurich cross-appealed to challenge the award of prejudgment interest.

## II

We review *de novo* the resolution of cross-motions for summary judgment, viewing the facts in the light most favorable to the nonmoving party on each motion. *See James River Ins. Co. v. Ultratec Spec. Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022). Here, however, our review is largely limited to interpreting insurance policies, which also involves plenary review. *See Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1301 (11th Cir. 2022).

We review the decision to award prejudgment interest for abuse of discretion. *See Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1298 (11th Cir. 2002).

## III

In its appeal, Gemini argues that the district court erred in ruling that the two policies attach at the same level such that *pro rata* contribution is triggered. In its cross-appeal, Zurich argues that (1) Gemini should not have received a final judgment in its favor because it was not a prevailing party; (2) even if judgment in its favor was properly entered, the district court abused its discretion in awarding Gemini prejudgment interest; and (3) even if

prejudgment interest was properly awarded, the interest should have stopped accruing on November 10, 2020—when Zurich acknowledged its obligation to pay its *pro rata* share—and not March 4, 2022. We turn first to Gemini's appeal.

## A

In Florida, "where more than one insurer's policy provides coverage for a loss," as the parties agree is the case here, "it is appropriate to review the insurance contracts to see if the documents address the 'ranking' or contribution of other insurers." *Sentry Ins. Co. v. Aetna Ins. Co.*, 450 So. 2d 1233, 1236 (Fla. 2d DCA 1984). That sort of "ranking" is usually accomplished through an "other insurance" clause. Florida law recognizes "three principal kinds" of "other insurance" clauses: (1) *pro rata*; (2) excess; and (3) escape or no liability. *See id.* A *pro rata* clause limits an insurance company's contribution to a proportion of the total loss based on the policy's limit. *See Auto-Owners Ins. Co. v. Palm Beach Cnty.*, 157 So. 2d 820, 822 (Fla. 2d DCA 1963); 15A Couch on Ins. § 219:27 (3d ed. 2023). An excess clause provides coverage only after other insurance limits are exhausted. *See Auto-Owners*, 157 So. 2d at 822. And an escape or no liability clause provides that there is no coverage if there is another policy that covers. *See id.*

With this general background in mind, we turn to the "other insurance" clauses at issue in this case.

Gemini's "other insurance" clause provides:

> **This insurance is excess over and shall not contribute with any of the other insurance,**

6                     Opinion of the Court                     22-13495

**whether primary, excess, contingent or on any other basis.**  This condition will not apply to insurance specifically written as excess over this policy.

When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will have the right to do so, but we will be entitled to the insured's rights against all those other insurers.

D.E. 40 at 3 (emphasis added).

Zurich's "other insurance" clause is slightly different.  It provides:

a.     For any covered "auto" you own, this Coverage Form provides primary insurance.  For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.  However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1)     Excess while it is connected to a motor vehicle you do not own; or

(2)     Primary while it is connected to a covered "auto" you own.

★ ★ ★

d.     **When this Coverage Form and any other Coverage Form or policy covers on the same basis,**

**either excess or primary, we will pay only our share. Our share is the proportion** that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

*Id.* at 2–3 (emphasis added).

"In Florida, where two insurance policies contain excess insurance clauses the clauses are deemed mutually repugnant and both insurers become primary and share the loss on a pro rata basis in accordance with their policy limits." *Travelers Ins. Co. v. Lexington Ins. Co.*, 478 So. 2d 363, 365 (Fla. 5th DCA 1985). Zurich argues, and the district court agreed, that both policies contain excess clauses such that *pro rata* contribution results. *See* Zurich's Br. at 16.

Gemini disagrees. It maintains that its own "other insurance" clause is "pure excess" because it is both "excess and non-contributory." Gemini's Br. at 9. Zurich's "other insurance" clause is *pro rata*, Gemini continues, because it says that it "will pay [Zurich's] share." *Id.*[1]

We ultimately side with Gemini based on *Progressive Express Ins. Co. v. Ferris*, 312 So. 3d 112 (Fla. 5th DCA 2020), and *Aetna Cas. & Sur. Co. v. Beane*, 385 So. 2d 1087 (Fla. 4th DCA 1980). We explain why below.

---

[1] Neither side argues that its "other insurance" clause is an escape or no liability clause.

*Ferris* dealt with two policies containing "conflicting 'other insurance' or excess [uninsured/underinsured motorist] clauses." 312 So. 3d at 114. One policy (Progressive's) provided as follows:

> **Any insurance we provide shall be excess over any other uninsured or underinsured motorist coverage**, except for bodily injury to you and, if the named insured is a natural person, a relative when occupying an insured auto or temporary substitute auto.

*Id.* (emphasis altered). The other policy (State Farm's) provided as follows:

> [T]he Uninsured Motor Vehicle Coverage provided by this policy applies as **excess coverage**
>
> a. If:
>
>   [two conditions, not at issue here, are met]
>
> then **we will pay the proportion of damages payable as excess** that our applicable limit bears to the sum of our applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

*Id.* at 115 (emphasis altered).

*Ferris* held that the first clause (Progressive's) was "pure excess," and that the second clause (State Farm's) was *pro rata*. *See id.* And in such a scenario, "courts give effect to the *pure excess* provision." *Id.* (emphasis added). Helpfully for our purposes, State Farm's "other insurance" clause in *Ferris* described itself—much like Zurich's here—as applying "excess coverage." Notwithstanding the label, *Ferris* deemed it a *pro rata* clause because of its "we

will pay the proportion" language.  That is language that Zurich's policy also contains.

 *Beane* similarly dealt with two excess policies that covered the same claim.   The first (Aetna's) provided that:

> [T]he insurance with respect to a temporary substitute automobile or non-owned automobile shall be **excess insurance over any other valid and collectible insurance.**

385 So. 2d at 1089 (emphasis added).   The second (American States')—a policy for "excess coverage in the nature of an umbrella policy"—provided that:

> If other collectible insurance with any other insurer is available to the insured covering a loss also covered hereunder (except insurance purchase to apply in excess of the sum of the retained limit and the limit of liability hereunder), **the insurance hereunder shall be in excess of, and shall not contribute with, such other insurance.**

*Id.* at 1088–89 (emphasis added).[2]

 Like Zurich, here, Aetna argued that the clauses were mutually repugnant such that the policies applied *pro rata*.  *See id.* at 1089.   But *Beane* placed special significance on the language in American States' policy that it "shall not contribute with such other insurance." *Id.* at 1090.  That language, *Beane* reasoned, meant that

---

[2] American States also provided primary coverage for $250,000, which had already been exhausted.  *See Beane*, 385 So. 2d at 1088.

American States' policy was excess to that of Aetna's. *Beane* was less concerned with categorizing the two policies and more focused on giving effect to the plain meaning of the policies' text. *See id.* ("So long as the requirements of law have been met, parties to contracts are free to shift the burden of loss. . . . After comparing the language of the two policies, the trial court correctly determined that the excess coverage should not be prorated.").

In sum, we have one Florida case, *Ferris*, that tells us that an "other insurance" clause containing the phrase "we will pay the proportion of damages payable as excess" means that the clause was *pro rata*, even though it also characterized itself as an excess clause. And we have *Beane*, which, in comparing two excess "other insurance" clauses, teaches that the phrase "[we] shall not contribute with such other insurance" carries with it special significance.

Turning back to the "other insurance" clauses at issue here, Zurich's contains the "we will pay the proportion" phrase from *Ferris* and Gemini's contains the "we shall not contribute" phrase from *Beane*. Considered together, we believe that *Ferris* and *Beane* counsel that Gemini's policy is excess to Zurich's.

## B

Zurich resists that application of *Ferris* and *Beane* on several grounds. None are convincing.

Zurich attempts to distinguish *Beane* by arguing that the presence of uninsured motorist coverage "significantly affected the court's decision." Zurich's Br. at 24. But we do not glean that rationale from the opinion, as *Ferris* described the two UM policies as

being on equal footing. *See Ferris*, 312 So. 3d at 114 ("This appeal answers . . . questions regarding the priority of . . . conflicting UM 'other insurance' clauses."). To the extent Zurich argues that *Ferris* was wrongly decided, we generally do not second-guess state courts on the application of their law. *See generally Mendez v. Wal-Mart Stores E., LP*, 67 F.4th 1354, 1359 (11th Cir. 2023) ("Federal courts sitting in diversity must [ ] 'follow the decisions of interme-diate state courts in the absence of convincing evidence that the highest court of the state would decide differently.'").

As to *Beane*, Zurich argues that the policies at issue there were not on the same level because one was a primary policy (Aetna's) and the other was an umbrella policy (American States'). *See* Zurich's Br. at 20. That distinction, Zurich contends, was the "important point in *Beane*." The problem for Zurich is that *Beane* does not rely on that distinction. Neither does it say that Aetna's policy was "primary." *See Beane*, 385 So. 2d at 1088 ("Aetna had issued a $50,000.00 *excess coverage policy* insuring [the driver's mother and the driver].") (emphasis added).

Zurich, however, is not alone in thinking it consequential that *Beane* involved an umbrella policy. At least one district court has said the same thing. *See AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1325 (M.D. Fla. 2011). *See also State Farm Mut. Auto. Ins. Co. v. Universal Atlas Cement Co.*, 406 So. 2d 1184, 1187 (Fla. 1st DCA 1981) (suggesting that *Beane* supports the proposition that an excess policy cannot be excess to an umbrella policy). Indeed, "umbrella coverages . . . are regarded as true excess over and above

any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." *Allstate Ins. Co. v. Exec. Car & Truck Leasing, Inc.*, 494 So. 2d 487, 489 (Fla. 1986) (quoting Appleman, Insurance Law and Practice § 4909.85 (1981)).[3]

Even if Zurich's reading of *Beane* is correct, that case is still instructive because it found significant, in determining the priority of the policies, the "shall not contribute" language. *See Beane*, 385 So. 2d at 1089–90. Moreover, our case *does not* involve an umbrella policy—both policies are primary. If Zurich is correct about the import of *Beane*, it would be a strange result for the "shall not contribute" language to play such a prominent role there—where the umbrella status of the policy would seemingly be enough—but not here.

Zurich strongly objects to the notion that there can be a "super excess" policy under Florida law, i.e., that one excess policy can be more excess than another. *See* Zurich's Br. at 16 ("The fundamental flaw in Gemini's argument is that there is no distinction in Florida law for 'pure excess' vs. 'excess' Other Insurance clauses."). But *Ferris* suggests otherwise. *See Ferris*, 312 So. 3d at 114 (characterizing an "other insurance" clause as "pure excess").

We are not concerned with what to call Gemini's "other insurance" clause. It appears to us that the three categories of "other insurance" clauses recognized by Florida courts do not represent rigid boxes into which every policy must be shoehorned. *See Sentry*

---

[3] We note that *AIG* was decided before *Ferris*.

*Ins. Co.*, 450 So. 2d at 1236 (describing them as the three "principal" categories); *Auto-Owners Ins.*, 157 So. 2d at 822 (calling them the three "general" categories); 4 New Appleman Law of Liability Insurance § 41.01 (Matthew Bender Rev. Ed. 2024) ("The actual wording of the 'other insurance' clause varies widely. There are several types of such clauses and a myriad of variations."). As *Beane* recognized with nearly identical "other insurance" clauses, "parties to contracts are free to shift the burden of loss." *Beane*, 385 So. 2d at 1090. And giving effect to the language in both policies—as we must, *see Travelers Indem. Co. v. PCR, Inc.*, 889 So. 2d 779, 785 (Fla. 2004) —we conclude that Gemini's policy is excess to that of Zurich's.

Accordingly, we reverse the district court's resolution of the cross-motions for summary judgment with regard to the amount of contribution and remand for entry of judgment in favor of Gemini for the principal amount of $1,000,000, with the understanding that Zurich has already paid half of that sum.

## IV

Because we reverse on Gemini's appeal, Zurich's first issue in its cross-appeal (that Gemini was not the prevailing party and thus not entitled to prejudgment interest) is moot. Upon entry of the amended final judgment on remand, Gemini will be the prevailing party. And, as Zurich concedes, *see* Zurich's Br. at 29, under Florida law a prevailing plaintiff is generally entitled to prejudgment interest as a matter of law. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985) ("[W]hen a verdict liquidates

damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss.").

Zurich's other two issues about prejudgment interest, however, remain live. They are (1) whether the district court abused its discretion in awarding prejudgment interest on the first $500,000, and, (2) assuming it did not, whether interest should have stopped accruing on November 10, 2020. Zurich does not contest that, if prejudgment interest were due, it would start accruing on February 7, 2019, the date that Gemini paid the $2 million to settle the underlying claim.

The "general rule [of entitlement to prejudgment interest in Florida] is not absolute. . . . and may depend on equitable considerations." *Broward Cnty. v. Finlayson*, 555 So. 2d 1211, 1213 (Fla. 1990). We set out those considerations, as we perceived them from Florida law, in *Blasland*, 283 F.3d at 1297, and later summarized them as follows: "(1) in matters concerning government entities, whether it would be equitable to put the burden of paying interest on the public in choosing between innocent victims; (2) whether it is equitable to allow an award of prejudgment interest when the delay between injury and judgment is the fault of the prevailing party; (3) whether it is equitable to award prejudgment interest to a party who could have, but failed to, mitigate its damages." *Wiand v. Lee*, 753 F.3d 1194, 1204 (11th Cir. 2014).

It is within the district court's sound discretion how to balance the equities, so we review any such decision for abuse of

discretion.  *See Blasland*, 283 F.3d at 1298.  On the first $500,000, which Zurich paid to Gemini on March 4, 2022, the district court balanced the *Blasland* factors and found that they weighed in Gemini's favor.  The court found the first factor inapplicable and reasoned that Gemini neither delayed judgment nor could have, but failed to, mitigate.

Zurich's primary objection is that the district court discounted its acknowledgment of its obligation to pay Gemini its *pro rata* share from as early as November 10, 2020.  But Zurich only agreed to the payment of $500,000 in exchange for a full release of the additional $500,000.  Because Zurich's offer was not unconditional, *see* D.E. at 56-4 at 3, Gemini was forced to litigate for the remaining $500,000 and thus prejudgment interest continued to run.  *See James A. Cummings, Inc. v. Young*, 589 So. 2d 950, 955 (Fla. 3d DCA 1991) ("evidence of tender must be absolute and unconditional to stop running of interest") (relying on *Lindsay v. Matthews*, 17 Fla. 575 (1880)).  *Cf. Blasland*, 283 F.3d at 1298 ("It does not matter that the [defendant] paid [the plaintiff] a lot of money if it paid less than it owed.").  It was not until March 4, 2022, that Zurich paid the $500,000 with no strings attached.  Accordingly, we find no abuse of discretion in the district court's decision to award prejudgment interest on the first $500,000 from February 7, 2019, to March 4, 2022.

As for the second $500,000 that Gemini is soon to obtain an amended judgment for, prejudgment interest shall run from the date of Gemini's payment, February 7, 2019, to the date of the

amended final judgment.  *See SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (explaining that "Florida law requires that prejudgment interest accrue until the date of the amended judgment.").  *See also* Fed. R. App. P. 37(b) ("If the court modifies or reverses a judgment with a direction that a money judgment be entered in the district court, the mandate must contain instructions about the allowance of interest.").

## V

We reverse the district court's resolution of the cross-motions for summary judgment, and remand for the court to enter judgment in favor of Gemini in the principal amount of $1,000,000 (understanding that Zurich has already paid $500,000).  We affirm the award of prejudgment interest on the first $500,000, and direct the court to award Gemini prejudgment interest on the second $500,000 from February 7, 2019, until the date of the amended final judgment.

**AFFIRMED in part, REVERSED in part, and REMANDED.**