[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13195

_____

STERLING BV, INC.,

  Plaintiff-Counter Defendant-Appellant-Cross Appellee,

*versus*

CADILLAC PRODUCTS PACKAGING COMPANY,

  Defendant-Counter Claimant-Appellee-Cross Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:18-cv-00209-MHC

_____

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

GRANT, Circuit Judge:

What started as a routine contract dispute between two merchants has lingered for more than five years—for no clear reason. In one corner is Sterling BV, a company that makes ready-to-eat meals for the United States military. In the other is Cadillac Products, which sold Sterling the packaging film used for those meals. And the problem between the two is that when some of that film flaked off into Sterling's meals, the military refused to buy them. A jury found Cadillac liable, and Cadillac does not fight that conclusion on appeal.

Consensus ends there. Sterling wants to recoup not only the price it paid for the film, but also the money it lost on the government contract. Cadillac says the parties' agreement barred such "consequential damages," while Sterling's take is that the agreement provides for just that. The answer depends on which party made an "offer" to the other under California law. If Cadillac's price quote was the offer, Sterling cannot receive consequential damages; if Sterling's purchase order was the offer, it can. And that distinction matters—to the tune of several million dollars.

We agree with the district court that Cadillac's price quote was an offer, and that Sterling accepted that offer—which means consequential damages are barred. We also agree with the district court's evidentiary rulings and its decision to award Sterling prejudgment interest. We thus affirm across the board.

# I.

The facts here read like a law school contracts exam. In 2017, Sterling asked Cadillac to submit a bid to supply film to cover prepackaged, ready-to-eat meals for the military. Cadillac, no surprise, was interested in making the sale and asked for a copy of Sterling's terms and conditions. The document that followed stated that if Cadillac defaulted on its obligations, it would be liable for "consequential damages incurred by Sterling in connection with such default."

A few days later, Cadillac provided a price quote to supply film for Sterling's facility in San Antonio, Texas. At the bottom of that document, Cadillac provided its own terms and conditions. But Cadillac's form contradicted Sterling's—it provided that "[i]n no event shall Cadillac Products Packaging Company be liable for consequential damages."

Nothing happened for about a month, when Sterling followed up on Cadillac's San Antonio quote, attaching a purchase order and requesting "updated pricing" and exact film dimensions. The new purchase order also changed the place of delivery from San Antonio, Texas, to Union City, California. Two days later, Cadillac submitted a new quote to supply Sterling's Union City facility. This Union City quote contained the same liability term as the one for San Antonio: "In no event shall Cadillac Products Packaging Company be liable for consequential damages."

After receiving the Union City quote, Sterling submitted several purchase orders to Cadillac. Sterling's purchase-order

emails also contained "Purchase Order Notes," which listed basic requirements like "[a]ll products shall be palletized" and "[m]arking shall face outward so as to allow for easy verification." But they were silent on liability or consequential damages. Nor were Sterling's terms and conditions attached along with the purchase orders—so its earlier demand for consequential damages was not repeated.

All told, Sterling placed twelve orders of film with Cadillac. But soon after Sterling began using Cadillac's film, the government found foil flakes in prepackaged meals it had bought. Worse yet, that led to a refusal to pay—Sterling ended up losing over six million units of business because of the faulty packaging. Cadillac first took the blame, repeatedly telling Sterling that it "suspected the foil flakes resulted from the use of a dull slitter blade in Cadillac's facility." But when the flakes persisted even after Cadillac replaced the new blades and took other precautionary measures, Cadillac changed its tune—the true culprit, it said, was Sterling's own faulty equipment.

Five months after Cadillac denied responsibility for the flakes, Sterling sued for breach of contract and sought both actual and consequential damages. In its answer, Cadillac denied that it was liable for either actual or consequential damages. The parties eventually filed dueling motions for summary judgment, where Cadillac argued that Sterling had no right to any consequential damages because its price quote expressly forbade them. Both motions were denied. Motions for reconsideration followed, and

this time the district court agreed with Cadillac—Sterling could not seek consequential damages because Cadillac's price quote forbade them.

Even so, Sterling later sought to introduce evidence of the consequential damages it suffered—over $4.6 million in lost sales, capital costs, obsolete inventory, and the like. When Cadillac filed a motion in limine to exclude that evidence, Sterling responded that it was entitled to prove consequential damages because "the implied warranty of fitness for a particular purpose gives rise to such damages," regardless of any contractual limitations. The district court disagreed and granted Cadillac's motion to exclude. Sterling filed a motion for reconsideration, but the district court denied that, too. A jury trial followed on the breach-of-contract claims.

The jury ultimately returned a $278,716 verdict for Sterling: $186,565 in principal, plus prejudgment interest of $92,151. Sterling now appeals all three of the district court's rulings involving consequential damages. And Cadillac appeals the district court's grant of prejudgment interest.

## II.

We review the district court's grant of summary judgment de novo. *Nehme v. Fla. Int'l Univ. Bd. of Trs.*, 121 F.4th 1379, 1383 (11th Cir. 2024). The district court's rulings on the motion in limine and the motion for reconsideration are reviewed for abuse of discretion. *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1244 (11th Cir. 2020); *Sanderlin v. Seminole Tribe*, 243 F.3d 1282, 1285 (11th Cir.

6                    Opinion of the Court                23-13195

2001).    As for the prejudgment interest question: some of our precedents suggest that the standard of review should be de novo, while others suggest that it should be abuse of discretion. *Compare Millennium Partners v. Colmar Storage, LLC*, 494 F.3d 1293, 1304 (11th Cir. 2007) (de novo), *with Gemini Ins. v. Zurich Am. Ins.*, 119 F.4th 1296, 1299 (11th Cir. 2024) (abuse of discretion).  But we need not untangle that knot today because the result is the same under either standard.

### III.

There are two broad categories of damages: direct and consequential.  24 Richard A. Lord, Williston on Contracts § 64:16 (4th ed. 2018).  Direct damages "flow naturally from a breach" and include those damages "that would follow any breach of similar character in the usual course of events."  *Id.*  Consequential damages, by contrast, allow parties to recover something extra: damages that flow "from some of the consequences or results of the breach."  *Id.*  The most common example is lost profits.  *See id.* Here, for example, Sterling seeks to recoup the money it lost when the military refused to pay for the tainted meals.

Under California law, which governs this dispute, it is important to identify which party made the offer because that offer largely sets the terms of the contract.  If Cadillac made the offer with its price quote, then consequential damages are unavailable. But if Sterling made the offer with its purchase order, then it can recover such damages.

The general rule in California is that price quotes are invitations to make an offer, not offers themselves. *See Tomlinson v. Wander Seed & Bulb Co.*, 177 Cal. App. 2d 462, 470–71 (Cal. Ct. App. 1960). But the general rule is just that—a general rule. There are exceptions. As a leading contracts treatise explains, "where a price quotation in a letter contains detailed terms, it may well be deemed an offer in light of the specificity and completeness of the commercial terms in the letter." Williston on Contracts § 4:10; *cf. Beck v. Am. Health Grp. Int'l*, 211 Cal. App. 3d 1555, 1562–63 (Cal. Ct. App. 1989) (general willingness to bargain not an offer), *superseded by statute on other grounds*, Cal. Bus. & Prof. Code § 650. The Restatement of Contracts strikes a similar chord, observing that a price quote may be an offer depending on "the terms of any previous inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom a communication is addressed." Restatement (Second) of Contracts § 26 cmt. c (Am. L. Inst. 1981). And while an invitation to make a bid is not itself an offer, the bid that follows typically is. *See* Williston on Contracts § 4:13. Or as the California Supreme Court put it in the context of public entities, a party's "solicitation for bids is merely a request *for offers* from interested parties." *See Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 388 P.3d 800, 807 (Cal. 2017) (emphasis added).

Here, the better interpretation is that Cadillac's price quote was the offer, not Sterling's purchase order. To start, the fewer people to whom a price quote is addressed, the more likely it is to be an offer. *See Merck & Cie v. Watson Lab'ys, Inc.*, 822 F.3d 1347, 1351 (Fed. Cir. 2016) (citing Restatement (Second) of Contracts

§ 26 cmt. c).  And Cadillac addressed its quote to just one party—Sterling—which suggests that it was an offer.  *See* Restatement (Second) of Contracts § 26 cmt. c.

Cadillac asked several specific questions about its exact obligations as it prepared its bid, including (1) the specifications for the film; (2) the size of the "cores"; (3) whether the cores were fiber or plastic; and (4) whether Sterling would provide any raw materials.  Sterling also informed Cadillac that it needed "640,000 printed" and "640,000 unprinted films, for weekly delivery, starting on 30 days from today."  Cadillac had this precise information in mind when it submitted its price quote two days later.  Because the quote came "in response to an inquiry specifying detailed terms," that alone suggests that it was "probably" an offer.  *See* Restatement (Second) of Contracts § 26 cmt. c, illus. 3.

As for whether the price quote contained enough "detailed terms" to function as an offer, the quote speaks for itself.  *See* Williston on Contracts § 4:10.  Prices were listed down to the hundredth of a penny—2.19 cents per unit of unprinted film and 2.49 cents per unit of printed film.  Key dates were provided too: November 8 for shipping and November 15 for delivery.  And the exact shipping address—which differed from Sterling's primary business address—was also included.  Cadillac's quote also suggested that it could produce 2.6 million units of each type of film.

Sterling responded to Cadillac's quote with a purchase order, asking Cadillac to "confirm receipt and ETA" of the order.  As the

district court pointed out, this note reflected an understanding that Cadillac was obligated to supply the foil upon receipt of the purchase order. All these suggest that Cadillac's price quote was an offer.

Sterling argues that the lack of a definite quantity term in Cadillac's price quote must mean it was not an offer, but that is not dispositive. *See Steiner v. Mobil Oil Corp.*, 569 P.2d 751, 761 (Cal. 1977). This dispute is governed by the California Uniform Commercial Code, and § 2204 of that Code "quite clearly does *not* incorporate the rule that parties must mutually assent to all essential terms." *Id.* at 762. So while a definite quantity term is typically essential to a contract, courts interpreting § 2204 have held that "parties may form a contract even though they do not agree" on "the quantity of the goods sold." *Id.* at 761.

In sum, the context surrounding Cadillac's price quote—which was individually solicited by Sterling, individually addressed to Sterling, and contained specific terms for the sale—leads us to agree with the district court that Cadillac's quote was an offer. And Sterling itself concedes that if Cadillac's price quote was the offer, then "an exclusion of liability provision in the quotation would bar recovery of consequential damages." We therefore affirm the district court's grant of summary judgment to Cadillac on the issue of consequential damages.

## IV.

We next consider Sterling's argument that it is entitled to consequential damages for a violation of the implied warranty of fitness for a particular purpose. There was no such violation here.

Cadillac limited Sterling's remedy "for any issue" to either "return of the goods and repayment of the purchase price" or "replacement of non-confirming or defective goods and services." Under California law, a limited remedy like this one "fails its essential purpose" when changed circumstances mean enforcement of that limited remedy "would essentially leave plaintiff with no remedy at all." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1040, 1055 (C.D. Cal. 2004) (quotation omitted).

The district court did not abuse its discretion in ruling that the limited remedies here—repayment or replacement—did not fail their essential purpose. Because California adopted the Uniform Commercial Code "verbatim," California courts look to the Code's comments for guidance. *See Kirzhner v. Mercedes-Benz USA, LLC*, 470 P.3d 56, 65 (Cal. 2020). And comment one to § 2-719 of the Code requires only that "minimum adequate remedies be available." *See* U.C.C. § 2-719 cmt. 1 (Am. L. Inst. & Unif. L. Comm'n 1951). Here, they were. Sterling had the choice between repayment and replacement. These options are a far cry from "no remedy at all." *See Nat'l Rural Telecomm. Coop.*, 319 F. Supp. 2d at 1055. We decline to take out our blue pencils and rewrite a contract negotiated at arm's length by sophisticated commercial parties.

When "two equal bargainers agree as to the appropriate remedy they should be held to the terms of their bargain." *O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995) (ellipses and quotation omitted).

We also reject Sterling's challenge to the district court's denial of its motion for reconsideration on this issue. The Northern District of Georgia's local rules do not favor motions for reconsideration, explaining that they should be filed only when "absolutely necessary," and should not be considered "as a matter of routine practice." N.D. Ga. Local R. 7.2(E). We give "great deference" to a district court's interpretation of its local rules and see nothing to disturb here. *Clark v. Hous. Auth.*, 971 F.2d 723, 727 (11th Cir. 1992). The motion for reconsideration offered no newly discovered evidence, no intervening development in the law, and no clear error. *See Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003). Sterling "simply rehashed arguments already considered and rejected," and the district court did not abuse its "considerable discretion" in refusing that effort. *See Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1381 (11th Cir. 2024).

## V.

Finally, we consider whether the district court erred in granting Sterling's motion for prejudgment interest under California Civil Code § 3287(b). That section explains the district court's discretion to include such a remedy: "Every person who is entitled under any judgment to receive damages based upon a

cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, *in its discretion*, fix, but in no event earlier than the date the action was filed." Cal. Civ. Code § 3287(b) (emphasis added).

"[B]y its very terms," this provision was "designed to allow trial courts flexibility." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 496 (Cal. Ct. App. 1982). It "created a limited exception to the prevailing general rule that prejudgment interest is not allowed on unliquidated obligations," which are the damages available when the parties have not prearranged for a specific award in the event of a breach. *Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 69 (Cal. Ct. App. 2001). The provision's goal was to "balance the concern for fairness to the debtor against the concern for full compensation to the wronged party." *Id.*

The California Code does not list any specific factors for courts to weigh when deciding the prejudgment interest question. *See* Cal. Civ. Code § 3287(b). But courts in that state typically consider "(1) the time between the lawsuit's filing and the judgment, (2) whether awarding interest will penalize the defendant for litigating a bona fide dispute or recognize that the plaintiff incurred an additional amount of damage as a result of the breach, and (3) whether the plaintiff made settlement offers such that the defendant's refusal to settle could be construed as placing the prejudgment interest amount at risk." *Zargarian v. BMW of N.*

*Am., LLC*, 442 F. Supp. 3d 1216, 1222 (C.D. Cal. 2020) (quotation omitted).  Here, the district court did just that, and we see no problem with its conclusion.

*First*, the five years between the lawsuit's filing and the judgment weighs in favor of awarding prejudgment interest. "Were the judicial process devoid of transaction costs," Sterling would have been entitled to reimbursement in 2018.  *See A & M Produce*, 135 Cal. App. 3d at 496.  So Cadillac "can hardly complain that these transaction costs have essentially allowed it to borrow" over $186,000 from Sterling for five years at zero percent interest. *Id.*

*Second*, awarding prejudgment interest does not penalize Cadillac for litigating a bona fide dispute.  The question is not whether there was a real dispute between the parties—here, there was—but whether awarding prejudgment interest would *punish* the losing party for exercising its right to litigate that dispute.  *See Zargarian*, 442 F. Supp. 3d at 1222.  It would not.  Compensating Sterling for what was effectively an interest-free loan to Cadillac over the course of the lawsuit ensures that it is made whole, no more and no less.  *See id.*  Otherwise, Sterling would lose (and Cadillac would gain) nearly $100,000—incentivizing defendants to drag breach-of-contract litigation on as long as possible.

In any event, much of the delay stemmed from Cadillac's own failures of production.  The district court in 2020 had to compel Cadillac to produce a witness for a deposition.  And because Cadillac later refused to produce both "the insurance

policy of Cadillac's excess insurance carrier and a detailed privilege log of Cadillac's Chief Financial Officer and General Counsel," Sterling was forced to file a second motion to compel. Cadillac emphasizes that the district court eventually found that motion moot—what it neglects to mention is that it was only mooted because it relented and produced the documents after Sterling filed the motion. Cadillac downplays these delays by pointing out that it was not sanctioned for them, which (to Cadillac) means it should not have to pay prejudgment interest. But that misunderstands the point—sanctions are not a prerequisite to prejudgment interest, which is meant to compensate Sterling, not punish Cadillac.

On top of that, Cadillac did not disclose one of its experts until the very last day for completing expert *depositions*—three months after the expert disclosure deadline. The district court ultimately excluded the new expert, but not before both parties spent time fighting over it. Finally, Cadillac filed certain documents for the first time the day before the district court held a hearing to sort out the parties' motions for reconsideration. Though the district court was not forced to continue the hearing as a result, it did explain that receiving the documents so late in the game delayed its resolution of the issue.

*Third*, Sterling did not offer to settle its claim against Cadillac, so this factor is neutral. Cadillac contends that no prejudgment interest should be awarded because it (as the defendant) offered to settle the case at a mediation in 2022. But, as the district court noted, the appropriate question under California

23-13195                Opinion of the Court                15

law is whether the *plaintiff* made a settlement offer.  *See A & M Produce*, 135 Cal. App. 3d at 497.

All in all, California Civil Code § 3287(b) vests trial courts with substantial discretion to decide whether prejudgment interest is warranted.  The district court properly applied that statute here, and its decision to award prejudgment interest was correct.

★    ★    ★

We **AFFIRM** the district court's judgment.